UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNN B. KANIOS | : | |
| | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 303 CV 369 (DJS) |
| | : | |
| V. | : | |
| | : | |
| UST, INC. and MARK ULIASZ | : | |
| | : | JANUARY 14, 2004 |
| Defendants. | : | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

### *PRELIMINARY STATEMENT*

Plaintiff hereby submits this Memorandum in support of her Motion to amend the Complaint filed March 3, 2003. As a responsive pleading has been filed in this case, plaintiff seeks leave from the Court to file the Amended Complaint attached to the accompanying Motion as Exhibit A.

The Amended Complaint seeks to add an additional basis for liability asserting a violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* As set forth in detail below, there has been no undue delay in making the present Motion, and there will be no surprise or prejudice should leave be granted. Moreover, the claim plaintiff seeks to add arises out of the conduct, transactions and occurrences set forth in the original Complaint.

## *FACTS*

### *I.   NATURE OF THE CASE.*

This proposed amendment by plaintiff Lynn B. Kanios seeks to add a claim for damages arising out of defendant's alleged violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*. The original Complaint, filed on March 3, 2003, asserts seven counts: (1) sex discrimination pursuant to 29 U.S.C. §2000 (Title VII); (2) sex discrimination pursuant to C.G.S. §46a-60(a) (CFEPA); (3) retaliation pursuant to 42 U.S.C. §2000e-3 (Title VII); (4) retaliation pursuant to C.G.S §46a-60(4) (CFEPA); (5) aiding and abetting pursuant to C.G.S §46a-60(5) (CFEPA); (6) negligent infliction of emotional distress; and (7) negligent misrepresentation. Plaintiff seeks to add one new count asserting a violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, arising out of her termination.

Plaintiff began her employment with defendant UST on March 6, 1995, when she was hired as a support staff secretary in defendant UST's Employee Relations Department. Plaintiff was promoted to the position of Associate Buyer in the purchasing department on July 21, 1997 and held this position until she was terminated on April 13, 2001.

At all times relevant hereto, plaintiff performed her duties in an exemplary fashion and received positive feedback from her superiors. Plaintiff's personnel file is devoid of negative reviews or comments, nor were any negative comments made to plaintiff with regard to her performance prior to her termination.

In 1998, plaintiff was told that she would be reporting to her new supervisor, defendant Mr. Mark Uliasz (Uliasz). At this time, Uliasz, in his capacity as plaintiff's supervisor and UST's agent, began a course of harassment directed at plaintiff reflective of his bias and contempt for

women in the workforce. His harassment took the form of repeated derogatory actions and comments about plaintiff's appearance, weight, eating habits and intelligence. Uliasz's comments included statements to plaintiff, upon her return from maternity leave, that he needed to "teach her [plaintiff] math 101 again...her thoughts are still at home...." Uliasz even went so far as to keep a small jar full of pennies which he labeled plaintiff's education fund. These exhibitions and comments were made not only to plaintiff directly, but were made in front of other employees as well as customers.

Incident to plaintiff's two pregnancies, Uliasz commented continuously that plaintiff "was really packing it [weight] on" and "was eating enough for two, and then some." These comments were continued through plaintiff's first pregnancy in 1998 and plaintiff's second pregnancy in 2000. Discovery has revealed a plethora of additional comments of a sexist and/or chauvinistic nature such as referring to plaintiff as a "fat bitch" and making derogatory statements about women in the workforce.

In early 2001, Uliasz's conduct reached its nadir when he shoved plaintiff out of his way in an attempt to get by her. As a result of Uliasz's abusive conduct and UST's failure to appropriately or adequately address plaintiff's complaints consistent with its representations and its published policy, plaintiff manifested symptoms of anxiety and depression for which she began taking medication.

In March 2001, plaintiff began treatment with Drs. Jane Hannifin and Lisa Trencher, both mental health specialists to which plaintiff was referred by the Employee Assistance Program at UST. Drs. Hannifin and Trencher recommended that plaintiff be put on medical leave for severe psychological distress "due to [a] work related incident." UST encouraged plaintiff to take such

leave under the FMLA, which began on March 20, 2001, assuring and representing to her that it was for her own good and that she would be allowed to return to work.

On March 21, 2001, just after plaintiff began her FMLA leave, UST received a letter[1] from plaintiff's attorney stating that plaintiff was the victim of discrimination causing severe emotional distress and requested that he and UST discuss means to resolve plaintiff's discrimination claims.

On or about April 12, 2001, plaintiff, while on medical leave and known by defendants to be in a fragile state of mind, received a letter from UST informing her that her employment had been terminated effective April 13, 2001. The reasons given by UST for plaintiff's sudden termination were, specifically, "performance failures" and "careless errors" in missing purchase orders as "discovered" by Uliasz on March 22, 2001, *one* day after defendant UST received a letter from plaintiff's attorney stating that plaintiff was the victim of discrimination causing severe emotional distress. These reasons are clearly pretextual, as demonstrated by a positive review and raise plaintiff received just a few weeks earlier and just prior to her counsel's first letter complaining of harassment and inflicted distress on plaintiff.

In her original Complaint, plaintiff did not include a claim under the FMLA because counsel was not able to ascertain such claim until materials requested through discovery were provided her on August 25, 2003. Acting in an abundance of caution and seeking to confirm documents suggesting plaintiff's FMLA claim, plaintiff undertook key depositions to solidify the merit in her FMLA claim. The merit in plaintiff's FMLA claim crystallized specifically on January 6, 2004, after defendant had finally provided plaintiff with the essential materials

-4-

enabling her to confirm the basis for her claim under the FMLA and after a critical deposition. Specifically, these materials had been requested on June 12, 2003 approximately six months prior to their actual delivery. Moreover, these essential materials, coupled with the information gathered during the deposition of UST's Director of Human Resources, underscore the logic in including plaintiff's FMLA claim. Accordingly, in the present Motion, plaintiff seeks to add one new count asserting a violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*

## II.   *PROCEDURAL BACKGROUND.*

The original Complaint in this action was filed on March 3, 2003, to which defendant filed an Answer dated April 1, 2003.

The discovery period started April 1, 2003, and by defendant's request for a 30-day extension to gather additional discovery materials, is to conclude on March 3, 2004.

## *ARGUMENT*

## I.   *STANDARD OF REVIEW.*

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend the pleadings "shall be freely given when justice so requires." Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234, aff'd, 101 F.3d 1393 (2d Cir. 1996). It is well settled law that the language contained in Rule 15(a) providing that leave to amend pleadings is to be "freely given when justice so requires" should be broadly construed to comport with the general policy of the Federal Rules to permit and encourage disposition of litigation on the merits. Grand Sheet Metal Products Co. v. Aetna Cas. and Sur. Co., 500 F.Supp. 904, 907 (D.Conn. 1980). It is "rare" that

---

[1] This letter was the second of two letters plaintiff's attorney sent to defendant UST stating,

- 5 -

leave to amend should be denied. Ricciuti v. New York City Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991); Wells v. Harris, 185 F.R.D. 128, 131 (D.Conn. 1999).

In fact,

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim[s] on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of amendment, etc.-- then leave sought should, as the rules require, be "freely given."

Wells v. Harris, 185 F.R.D. 128, 131 (D.Conn. 1999); see also Foman v. Davis, 371 U.S. 178, 182 (1962).

A court should not deny leave to file a proposed amended complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claims which entitle her to relief. Wells, 185 F.R.D. at 131; Ricciuti, 941 F.2d at 123.

Moreover, pursuant to Rule 15(c), an amendment of a pleading relates back to the date of the original pleading when ... the claim asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original. See, e.g., Wells, 185 F.R.D. at 131; White v. White Rose Food, a Div. of DiGiorgio Corp., 128 F.3d 110, 116 (2d Cir. 1997); Travelers Ins. Co. v. 633 Third Associates, 14 F.3d 114, 125 (2d Cir. 1994). As within the entire purview of Rule 15, Rule 15(c) is also to be liberally construed. Wells, 185

---

among other things, that plaintiff was the subject of unlawful discrimination.

F.R.D. at 131; Siegel v. Converters Transp., Inc., 714 F.2d 213, 215 (2d Cir. 1983). Kamtaprassad v. The Chase Manhattan Corp., 2001 WL 1662071 (S.D.N.Y.) (attached hereto as Exhibit A); Gold v. Carus, P.C., 2003 WL 22134913 (E.D.N.Y) (attached hereto as Exhibit B).

### A. *There Has Been No Undue Delay.*

As an initial matter, it is patently clear that there has been no undue delay in the filing of this Motion. The original Complaint was filed on March 3, 2003. The discovery period started April 1, 2003, and by defendant's request for a 30-day extension to gather additional discovery materials, is to conclude on March 3, 2004.

More importantly, on January 6, 2003, defendant provided plaintiff with essential materials enabling her to confirm the basis for her claim under the FMLA. These materials had been requested on June 12, 2003, approximately six months *prior* to their actual delivery. In addition, these essential materials, coupled with the information gathered during the subsequent deposition of UST's Director of Human Resources, underscore the logic and necessity of including plaintiff's FMLA claim.

### B. *The Proposed Amendment Will Not Cause Surprise Or Prejudice.*

As an initial matter, it is patently clear that there will be no surprise or prejudice in the filing of this Motion. The original Complaint was filed on March 3, 2003. The discovery period started April 1, 2003, and by defendant's request for a 30-day extension to gather additional discovery materials, is to conclude on March 3, 2004.

Moreover, defendant itself, despite requests, continued to remain in possession of the materials directly linked to plaintiff's FMLA claim until January 6, 2004 less than one month away from the discovery deadline in this case prior to defendant's subsequent motion for a 30-

day extension. Accordingly, defendant will not be prejudiced or surprised should the requested amendment be permitted. Moreover, a defendant is not prejudiced by an amendment adding allegations of further wrongful conduct by the defendant against the background of many similar allegations. Wells, 185 F.R.D. at 132; Malave v. Bolger, 599 F.Supp. 221, 224 (D.Conn. 1984). Finally, not a single factual predicate to liability has been added to the Complaint.

### C. *The Proposed Amendments Relate Back To The Original Complaint.*

Plaintiff's FMLA claim clearly relates back to the original Complaint. The FMLA contains two statute of limitations provisions: it must be filed three years from the last event constituting a willful violation, and two years from the last event constituting a violation in all other cases. Kamtaprassad v. The Chase Manhattan Corp., 2001 WL 1662071 (S.D.N.Y.) (attached as Exhibit A). Because plaintiff's First Amended Complaint alleges, in the alternative, a willful violation, there is ample basis for the three-year limitation period to apply.[2]

In addition, plaintiff's FMLA claim is timely because it relates back to her original Complaint, which was filed on March 3, 2003. Kamtaprassad v. The Chase Manhattan Corp., 2001 WL 1662071 (S.D.N.Y.) (attached as Exhibit A); Gold v. Carus, P.C., 2003 WL 22134913 (E.D.N.Y.) (attached as Exhibit B). Both the original Complaint and First Amended Complaint contain "a common core of operative facts". Kamtaprassad, 2001 WL 1662071 (S.D.N.Y.) (Ex. A). In fact, the facts in both the original Complaint and First Amended Complaint are identical. "The Second Circuit has warned that when a suit is filed in a federal court under the Rules, the

---

[2] Plaintiff's termination, which occurred on April 13, 2001, is the last event alleged to constitute a violation of the FMLA. The first time plaintiff will assert an FMLA claim is in her First Amended Complaint, which, if permitted by this Court, will be filed *less* than three years after her termination.

- 8 -

defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be." Id.

Accordingly, although the amended pleading contains alternate theories of liability, these theories are based on the same core facts as presented in the original pleading and should relate back to the original Complaint.

## CONCLUSION

In view of the foregoing, and in view of the liberal application of Federal Rule 15, plaintiff respectfully requests that the Court grant her Motion to Amend in its entirety.

By /s/
Scott R. Lucas (CT00517)
Michel Bayonne (CT24628)
*Attorneys for Lynn B. Kanios*
Martin Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT 06902
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mbayonne@mlc-law.com