Not Reported in F.Supp.                                                          Page 1
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

C

United States District Court,
S.D. New York.

In re the Application of The AKRON BEACON JOURNAL, Applicant for Intervention.
Terry HAVENS and the Havens Company and William Miller, Plaintiffs,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

No. 94 Civ. 1402 (CSH).

April 20, 1995.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

*1 This case is before the Court on a motion by the *Akron Beacon Journal*
("Journal") for leave to intervene in the above-captioned action (the "Havens
litigation"). The Journal seeks to modify the Protective Order dated May
19, 1993 (the "Protective Order" or "Order") entered in the Havens litigation and
require all further documents and information exchanged during the course of
discovery in this matter to be filed with the Clerk of the Court. For the
following reasons the motion to intervene is granted; motion to modify the Order
is granted; and motion to file future discovery documents with the Clerk of the
Court is denied.

BACKGROUND

The Havens litigation was commenced on September 25, 1992 in the United States
District Court for the Southern District of Ohio before the Honorable Herman J.
Weber. Plaintiffs Terry Havens, et al., alleged in their action that Metropolitan
Life Insurance Co. ("MetLife") had breached an agreement whereby Havens was to be
MetLife's exclusive broker for marketing certain insurance policies to large groups
of people. Plaintiffs alleged that MetLife replaced Havens with another broker,
Asher Schapiro. Plaintiffs further alleged that a MetLife employee provided
Schapiro with $500,000.00 in expense money for the purpose of influencing public
officials in MetLife's attempt to obtain the exclusive rights to market certain
insurance policies to Ohio state employees during the employees' work hours.

The parties attended a pretrial conference with Judge Weber on February 26, 1993
in order to resolve disputes regarding discovery and the production of documents.
Judge Weber urged the parties to resolve their discovery disputes. He recommended
that a protective order might be appropriate to limit the use of discovery outside
the context of the lawsuit and, in so doing, expedite the resolution of the
parties' discovery disputes. [FN1]

Plaintiffs and MetLife reached a general agreement concerning a protective order
with respect to the confidential documents of both parties. However, with respect
to a particular group of documents, MetLife took the position that they were
particularly sensitive and should be disclosed only to plaintiffs' counsel, but not
to plaintiffs themselves. MetLife alleged that one of the plaintiffs had made
prior contact with the media regarding these matters and expressed its concern that
plaintiffs would expose discovery materials to the media in an attempt to embarrass
MetLife. This issue could not be resolved by agreement of counsel and resulted in
a hearing before Judge Weber in chambers on April 29, 1993 (the "April
Conference").

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                              Page 2
23 Media L. Rep. 1993
**(Cite as: 1995 WL 234710 (S.D.N.Y.))**

At the April Conference, counsel indicated that an agreement had been reached
concerning a protective order for confidential documents.   However, plaintiff's
counsel indicated that, for ethical reasons, he could not agree to the second
designation of "extra-confidential" documents, which would be kept secret from his
clients.   Judge Weber stated his concern that plaintiffs might need access to
"extra-confidential" documents for purposes of making a decision regarding a
possible settlement.   After reserving the right to modify the document
designations, the judge indicated that he would order that documents designated
"extra-confidential" could not be shown to plaintiffs, subject to counsel's right
to have the court reconsider its order at a later time.

**\*2** The May 19, 1993 Protective Order provided that, pursuant to <u>Fed.R.Civ.P.</u>
<u>26(c)</u>, discovery materials designated "confidential" or "extra- confidential" would
be maintained under seal until further order of the court. The parties to the
action were authorized to designate as subject to the Order any discovery material
"that would reasonably be subject to protection" under <u>Rule 26(c)</u>.   The Order
required that all designations be made in good faith.   The parties were provided
with the right to challenge an opposing party's designation.   However, the Order
required a party challenging a designation to "show particularized need for such
material for the restrictions to be removed."   The Order preserved the right to
challenge designations of confidentiality for parties having failed to make such a
challenge.   Finally, the Order allowed any party to "apply to the Court for
modification of th[e] Order at any time."

The Journal, a daily newspaper published in Ohio, began an investigation into the
nature of the relationships between MetLife's paid representatives and Ohio state
public officials and possible conflicts of interest by those officials. Because the
Havens litigation was thought to be relevant to the Journal's investigation, Andrew
Zajac, a reporter for the Journal, went to the Clerk of the Court's office to
physically inspect the file on January 11, 1993.   The case file contained a number
of sealed envelopes.   In addition, Zajac was informed that an additional file
folder of sealed materials was in the chambers of Judge Weber.   A review of the
docket sheet indicated that many items, including entire deposition transcripts,
were under seal.

On January 26, 1994 Judge Weber granted MetLife's motion to change venue to the
Southern District of New York.   On March 22, 1994 plaintiffs and defendant settled
and resolved all issues in the Havens litigation.   Upon being advised of the
parties' settlement, this Court issued an Order of Discontinuance on March 23,
1994.   The Journal made this present motion for application to intervene and to
unseal the record on March 23, 1994, the same day that this Court had issued its
Order of Discontinuance.

                              DISCUSSION

The Journal seeks to intervene as of right under <u>Fed.R.Civ.P. 24(a)(2)</u>.   In
addition, the Journal seeks to have the Protective Order vacated on the basis that
documents were sealed without a finding of good cause as required by <u>Fed.R.Civ.P.</u>
<u>26(c)(7)</u>.   Finally, the Journal seeks an exception from local Civil Rule 18(a) of
this Court in order that all future documents related to the Havens litigation will
be filed with the Clerk of the Court.   Each of these claims is analyzed seriatim.

A. <u>Fed.R.Civ.P. 24</u>

MetLife contends that the Journal's <u>Fed.R.Civ.P. 24(a)</u> motion should be denied.
MetLife asserts that the Journal does not satisfy the criteria for intervention as
of right under <u>Fed.R.Civ.P. 24(a)(2)</u>.   MetLife also contends that <u>Rule 24(a)</u> is
not the "proper mechanism" to unseal a protective order entered in an unrelated

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                                    Page 3
23 Media L. Rep. 1993
**(Cite as: 1995 WL 234710 (S.D.N.Y.))**

judicial proceeding...." (Defendant's Memorandum of Law in Opposition to the
Application to Intervene and Modify the Protective Order ("Defendant's Memo of
Law") at 35.)

**\*3** Prior case law provides little guidance in determining what is the proper
procedural mechanism for a nonparty to seek modification of a protective order.
The Second Circuit has ruled on the public right of access to discovery documents
on a number of occasions. However, the court has only briefly addressed the
procedural niceties of non-party intervention. The Second Circuit acknowledged
the disarray in this area of the law:

> [t]he case law on the procedural aspects of a right of access is, as yet, no
> clearer than what has emerged on the substantive aspects. A footnote to the
> majority opinion in *Globe Newspaper Co.* states that "representatives of the press
> and general public 'must be given an opportunity to be heard on the question of
> their exclusion.' " The means of affording that opportunity remain uncertain.
> *In re Herald Co., 734 F.2d 93, 101 (2d Cir.1984)* (citation omitted).

In *Herald*, the district judge was presiding over a criminal prosecution. The
judge, in contemplation of a motion to exclude the public from a hearing on a
suppression motion, inquired if anyone in the courtroom wished to be heard on the
issue of closure. A reporter for the *Post Standard* stated his objection and said
an attorney for the newspaper was on his way to the courthouse. When counsel for
the newspaper arrived he was allowed an opportunity to argue in opposition to
closure. The district court subsequently granted defendant's motion for closure.
In so doing, the district court denied the Herald's request for prior notice of any
further actions to exclude the public from further proceedings in the case. On
appeal, the Second Circuit held that "representatives of the press and general
public 'must be given an opportunity to be heard on the question of their
exclusion.' " *Id.* at 101 (quoting 457 U.S. at 609 n. 25 (citing *Gannett*, 443 U.S.
at 401 (Powell, J., concurring))). [FN2] The court, however, did not indicate the
proper procedural mechanism for a member of the public to assert a right of access.
*See also In re New York Times Co., 828 F.2d 110, 113 (2d Cir.1987)* (noting that
"the district court chose to treat [news bureaus seeking to vacate district court's
protective order] as intervenors" without commenting on the proper procedure for
such a motion), *cert. denied sub nom., Esposito v. New York Times Co., 485 U.S. 977
(1988)*.

In *Martindell v. International Tel. & Tel. Corp., 594 F.2d 291 (2d Cir.1979)*, the
Second Circuit, without prolonged discussion, did suggest the proper procedure for
a nonparty to seek vacation or modification of a protective order. The federal
government had informally asked the trial judge, first by telephone, then by
letter, for access to sealed deposition transcripts in a suit between private
litigants. The depositions had been taken pursuant to a court-approved
stipulation providing that access to the depositions was to be granted only to
parties of the action. The Second Circuit held that:

> **\*4** [t]he Government may not, however, simply by picking up the telephone or
> writing a letter to the court ... insinuate itself into a private civil lawsuit
> between others. The proper procedure, as the Government should know, was ... to
> seek permissive intervention in the private action pursuant to Rule 24(b)
> F.R.Civ.P., for the purpose of obtaining vacation or modification of the
> protective order.
> *Martindell*, 594 F.2d at 294.

However, the Second Circuit, in fact, regarded the government's informal motion to
intervene as a Rule 24(b) motion. The Court ruled that defendants' failure to
challenge the government's standing in the case resulted in a waiver of any
objections to the government's intervention. The court ruled that defendants'
waiver along with the trial court's "informal entertainment of the Government's
application for vacation or modification of the protective order thus amounted to a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                              Page 4
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

*de facto* grant of permissive intervention pursuant to Rule 24(b)." *Id.*

The Second Circuit again briefly addressed the proper procedural mechanism for intervention in *Palmieri v. New York*, 779 F.2d 861 (2d Cir.1985). In a civil antitrust action between private litigants, New York State sought intervention in order to modify two sealing orders. Modification was sought to allow a state grand jury and the State Attorney General access to the sealed information. The court stated that "[a]ppellants do not contest, and we see no reason to question, the *procedural* right of the Attorney General to permissive intervention pursuant to Fed.R.Civ.P. 24(b)." *Palmieri*, 779 F.2d at 864 (emphasis in original).

Other circuits have also addressed the proper procedure for a nonparty seeking modification of a protective order. The First Circuit ruled in *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 784 (1st Cir.1985), *cert. denied*, 488 U.S. 1030 (1989), that it was "[un]willing to create a special category of non-Rule 24 intervention for third parties who wish to challenge protective orders through informal motion." The court held that Rule 24 "intervention is 'the procedurally correct course' for third-party challenges to protective orders." *Id.* at 783 (emphasis in original) (quoting *In re Beef Industry Antitrust Litigation*, 589 F.2d 786, 789 (5th Cir.1979)). However, the First Circuit did not specify in *Public Citizen* whether Rule 24(a) or 24(b) is the proper mechanism. Rather, in a footnote to its discussion of the proper procedure, the court quoted what it referred to as the "relevant part" of Rule 24 and, in so doing, quoted substantial portions of Rule 24(a), (b) and (c). *Id.* at 783 n. 8.

More recently, the Ninth Circuit has also ruled that Fed.R.Civ.P. 24 is the proper method for a nonparty seeking modification of a protective order. *See Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir.), *cert. denied sub nom., International Ins. Co. v. Bridgestone/Firestone, Inc.*, 113 S.Ct. 197 (1992). Specifically, the Ninth Circuit held that "Rule 24(b) permits [nonparties] limited intervention for the purpose of challenging a protective order." *Beckman Industries, Inc.*, 966 F.2d at 473.

*5 While the criteria for intervention under 24(a) and (b) differ, the "distinction is neither as clearcut nor as important as the usual statement would suggest." 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure §  1902*, at 231 (2d ed. 1986 & Supp.1993). Movants will often rely alternatively on Rule 24(a) and (b) and it is not uncommon for a court to allow intervention in such cases without specifying the subdivision under which intervention has been granted. *Id.* Furthermore, an applicant who fails to meet the requirements of Rule 24(a) may be permitted to intervene under 24(b)(2). *Id.*

In the instant case, the Journal filed its Notice of Motion without stating whether it was proceeding under Rule 24(a) or (b). The accompanying brief cites Rule 24(a) as the basis for intervention. (Memorandum of Law in Support of the Application to Intervene and to Unseal the Record ("Memo of Law to Intervene") at 5-6.) However, the Journal adequately states its grounds for intervention. The Journal states that it seeks to modify Judge Weber's Protective Order for its failure to meet the good cause requirement of Fed.R.Civ.P. 26(c). (Memo of Law to Intervene at 8-10.) Citing Fed.R.Civ.P. 26(c) and 5(d), the Journal asserts a right of access to the "Havens litigation" discovery documents absent a valid protective order. The Journal's claims are sufficient for this Court to make a determination as to whether there is a basis for intervention. Accordingly, I construe the Journal's motion as properly made under Fed.R.Civ.P. 24(b)(2).

B. *Timeliness of Motion to Intervene*

An application to intervene under Rule 24(a) or Rule 24(b) must be "timely." Fed.R.Civ.P. 24.   MetLife raises two objections regarding the timeliness of the

Not Reported in F.Supp.                                                     Page 5
23 Media L. Rep. 1993
**(Cite as: 1995 WL 234710 (S.D.N.Y.))**

Journal's motion to intervene.  First, MetLife contends that the Journal "cannot intervene because the action in which intervention is sought has been dismissed." (Defendant's Memo of Law at 24.)  Alternatively, MetLife contends that even if intervention is permitted after an order of discontinuance, the Journal's motion should be denied as untimely in view of "the totality of the circumstances." (Defendant's Memo of Law at 29.)

As to the first point of objection, MetLife asserts that after this Court had entered its Order of Discontinuance, it no longer had jurisdiction to hear a challenge to the Protective Order.  (Id. at 24-25.)  However, dismissal of the underlying action is not dispositive for motions to intervene for the limited purpose of challenging a protective order.  The trial court continues to have the power to modify a protective order, even after the underlying action has been dismissed.

In *Federal Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir.1982), a motion seeking modification of a protective order was filed two years after the settlement of the underlying claim.  In excusing the applicant's delay, Chief Judge Weinstein held that a liberal interpretation of the intervention rule was appropriate.  *In re Franklin Nat. Bank Securities Lit.*, 92 F.R.D. 468, 471 (E.D.N.Y.1981).  Thus, applicant's motion to intervene was granted, though the district court denied the request for modification of the order. *Id. at 471-72*. In affirming the district court's opinion, the Second Circuit did not perceive any jurisdictional deficiencies regarding the motion *Id.* at 232-33.  Similarly, in *Westchester Radiological v. Blue Cross/Blue Shield*, 138 F.R.D. 33 (S.D.N.Y.1991), the court ruled that a motion to intervene was timely, even after the underlying antitrust action had been concluded.  The court held that "[a] court that enters a protective order retains the power to modify it as long as it is in effect, even if the underlying suit has been dismissed." *Id.* at 34 n. 1 (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir.1990), cert. denied, 111 S.Ct. 799 (1991)); *see also Beckman Industries, Inc.*, 966 F.2d at 473 (holding that intervention to modify a protective order did not require an independent jurisdictional basis, since the district court retained the power to modify the order).

*\*6 Thus, this Court has jurisdiction to hear the Journal's motion, though the parties to the underlying suit have settled their claims.  Moreover, the Order of Discontinuance filed by this Court allowed for plaintiff to seek restoration of the suit within sixty days.  The settlement, therefore, had not been finalized by the time the Journal made its motion to intervene.

MetLife claims that, even if there is a jurisdictional basis for the Journal's application to intervene, the motion should be dismissed as untimely. (Defendant's Memo of Law at 28.)  Determination of the timeliness of an application to intervene is committed to the sound discretion of the trial court.  *Farmland Dairies v. Com'r of N.Y. Dept. of Agr.*, 847 F.2d 1038, 1043-44 (2d Cir.1988) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973); *United States v. New York*, 820 F.2d 554, 557 (2d Cir.1987); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594-95 (2d Cir.1986)).  To guide its discretion the district court should evaluate the application's timeliness "against the totality of the circumstances before the court." *Farmland Dairies*, 847 F.2d at 1044.  The following factors, while not an exhaustive list, should be considered:
(1) the length of time the applicant knew or should have known of his interest before making the motion;  (2) prejudice to the existing parties resulting from the applicant's delay;  (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness.
*Id.*; *see also Public Citizen*, 858 F.2d at 785-87.  In addition, the Second Circuit noted in *Farmland Dairies* that "post-judgment intervention is generally

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                                    Page 6
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

disfavored because it fosters delay and prejudice to existing parties." *Farmland Dairies*, 847 F.2d at 1044.

However, as the First Circuit and the District of Columbia Court of Appeals have observed, ordinary principles applicable to intervention do not necessarily apply to intervention for the limited purpose of modifying a protective order to gain access to documents. *Public Citizen*, 858 F.2d at 787; *Mokhiber v. Davis*, 537 A.2d 1100, 1105 (D.C.Cir.1988). The First Circuit held:

[T]o the extent [a right of access] exists, it exists today for the records of cases decided a hundred years ago as surely as is does for lawsuits now in the early stages of motions litigation. The fact that a suit has gone to judgment does not in any sense militate against the public's right to prosecute a substantiated right to see the records of a particular case. Moreover, access to court records does not involve relitigation of the underlying dispute, so the rationale behind requiring extraordinary circumstances for postjudgment intervention does not as a rule apply to access claims.

*Public Citizen*, 858 F.2d at 787 (alterations in original) (quoting *Mokhiber*, 537 A.2d at 1105).

Applying the four factors set out in *Farmland Dairies* to the instant case, the Journal's motion was timely. The first factor to be considered is the length of time that the Journal knew or should have known of its interest in this case before it made its motion to intervene. MetLife argues that since the commencement of the Havens litigation in September, 1992, "the Havens litigation has been publicly docketed and, as such, has been a matter of public record to which [the Journal] has indisputably had access." (Defendant's Memo of Law at 30.) The Journal contends that it did not acquire "actual knowledge of the sealed files in this case" until January 10, 1994. (Reply Memorandum of Law in Support of the Application to Intervene and to Unseal the Record at 12- 13.) However, actual or constructive knowledge of the underlying litigation is not dispositive. As the First Circuit noted in *Public Citizen*:

*7 [I]t is now well-established that it is not the simple fact of knowing that a litigation exists that triggers the obligation to file a timely application for intervention. Rather, the appropriate inquiry is when the intervenor became aware that its interest in the case would no longer be adequately protected by the parties.

*Public Citizen*, 858 F.2d at 785. The parties to the Havens litigation eventually agreed to the Protective Order issued by Judge Weber. However, until the pretrial settlement had been reached in the Havens litigation, there was no reason for the Journal to believe its interest in public disclosure of certain documents would no longer be pursued by Havens. As MetLife acknowledges, plaintiffs in the Havens litigation had made a motion to modify the Protective Order as late as June 16, 1993. (Defendant's Memo of Law at 31.) Moreover, by its very terms, the Protective Order did not affect the admissibility of sealed documents at trial. (Zajac Aff. Ex. B Protective Order at 7.) The Journal may have delayed its application to intervene in anticipation of the public disclosure at trial of the documents it sought. The Journal was assured that its interests would not be adequately protected only after the parties in the Havens litigation had reached a settlement. The Journal filed its motion to intervene on the same day this Court filed an Order of Discontinuance for the Havens litigation. Thus, there was no significant delay in the filing of the Journal's motion.

The second factor to be considered is the prejudice to the existing parties due to any delay in intervening. As the First Circuit has noted, "[t]his factor encompasses the basic fairness notion that intervention should not work a 'last minute disruption of painstaking work by the parties and the court.' " *Public Citizen*, 858 F.2d at 786. Thus, if intervention "relates to an ancillary issue and will not disrupt the resolution of the underlying merits, untimely intervention is much less likely to prejudice the parties." *Id*. In the instant case, the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Journal seeks to intervene only for the limited purpose of challenging the Protective Order. Any "delay" in litigating this discrete and ancillary issue will cause little prejudice to the existing parties in the case, especially since the parties to the underlying action have agreed to a settlement of all claims.

Furthermore, a number of circuits have held that the question of prejudice resulting from postjudgment access to documents is best applied to the merits of the motion to lift the protective order rather than to the issue of the motion's timeliness. The District of Columbia Court of Appeals ruled that:

[T]he prejudice the parties would suffer from postjudgment access to court documents should not determine the timeliness of the intervention to assert [a] right of access. Instead, assuming an intervenor does assert a legitimate, presumptive right to open the court record of a particular dispute, the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order--that is, the court's judgment as to whether, under the circumstances, the balance of equities favoring sealing overrides any presumptive right of access.

*8 *Mokhiber*, 537 A.2d at 1106-07. *See also Public Citizen*, 858 F.2d at 787. The Court finds this analysis persuasive and, in so doing, rejects the notion that prejudice to the parties in the Havens litigation would be grounds for denying the Journal's motion to intervene for the limited purpose of lifting the Protective Order.

The remaining factors favor a finding timeliness. The third factor to be considered is the prejudice that would be suffered by the Journal if its motion were denied due to its untimeliness. If the Journal's motion is found untimely, a judgment on the merits of the motion would be frustrated and the public's right of access in this case would go untested. *See Public Citizen*, 858 F.2d at 787. The final consideration is any unusual circumstances that may militate for or against a finding of timeliness. The documents sealed by Judge Weber allegedly pertain to bribes paid to state officials and would consequently relate to matters of public concern. Matters of public concern would be unusual circumstances that would militate for a finding of timeliness.

Having found that the application to intervene meets the procedural requirements of Fed.R.Civ.P. 24, the Court now turns to the merits of the Journal's claimed right of access to the sealed discovery documents.

C. *Public Right of Access to Discovery Documents*

MetLife contends that the Journal has no presumptive right to the discovery materials sealed pursuant to the Protective Order entered by the district court. MetLife asserts that "[a] newspaper has no greater right, status, or interest than any other litigant or stranger before this court." (Defendant's Memo of Law at 12.) While a newspaper *qua* newspaper may have no greater right of access than any other litigant or the public, the proper query is whether the public, or a news agency as its representative, has a presumptive right of access to discovery materials. Relying on *Seattle Times Co. v. Rheinhart*, 467 U.S. 20 (1984), defendant contends that the right of access to discovery in civil litigation is limited. In *Seattle Times*, the Supreme Court seemed to foreclose any claims of a general common law or First Amendment right to inspect pretrial discovery documents produced for civil litigation. The Court held that the discovery process is "a matter of legislative grace." *Seattle Times Co., 467 U.S. at 32.* Furthermore, pretrial depositions and interrogatories traditionally "were not open to the public at common law." *Id.* at 33. The Court also noted that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or tangentially related, to the underlying cause of action." *Id.* The Court held, therefore, that "restraints placed on discovered, but not yet admitted, information are not a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                                Page 8
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

restriction on a traditionally public source of information." *Id.*

In *Seattle Times,* a religious group brought suit against that newspaper for defamation and invasion of privacy.  In preparation for its defense, the Seattle Times sought discovery of information regarding membership in and donations to the religious group.  The trial court granted a motion to compel that discovery. Subsequently, the court entered a protective order upon the religious group's showing that public release of the discovered material would adversely affect the group's membership and income and would subject its members to harassment and reprisals.  The protective order was entered pursuant to Washington State's discovery rule, which is modeled after Fed.R.Civ.P. Rule 26(c). [FN3]  The order prohibited the Seattle Times from publishing, disseminating, or using the information in any way except in preparation of their case.  The Seattle Times challenged the protective order as a prior restraint on speech in violation of the First Amendment.

*9 The Supreme Court rejected the Seattle Times' claim, holding that protective orders did not require "heightened First Amendment scrutiny." *Seattle Times,* 467 U.S. at 36.  The Court ruled that it was necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* at 32.  The Court ruled that prevention of the abuses that can attend the discovery process is sufficient justification for the authorization of protective orders.  *Id.* at 35-36.  Thus, the Court held that "where ... a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Id.* at 37.

Relying on the implicit holding of *Seattle Times,* as well as a plain reading of Fed.R.Civ.P. 26(c) and 5(d), the Second Circuit has recognized a statutory right of access to discovery documents produced for civil litigation absent a showing of good cause.  *In Re Agent Orange Product Liability Litigation,* 821 F.2d 139, 145-46 (2d Cir.), *cert. denied sub nom., Dow Chemical Co. v. Ryan,* 484 U.S. 953 (1987). The Second Circuit held that:
Rule 26(c) demonstrates that the party seeking a protective order has the burden of showing that good cause exists for issuance of that order.  It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection.
*Id.* at 145.  The court noted that "[a]ny other conclusion effectively would negate the good cause requirement of Rule 26(c)." *Id.* at 146; *see also Public Citizen,* 858 F.2d at 789 ("[a]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings").

Similarly, the Second Circuit held that the Fed.R.Civ.P. 5(d) requirement that all discovery documents be filed with the district court also implicated a statutory public right of access.  Notwithstanding local Civil Rule 18(a), which exempts parties in actions brought in the Southern and Eastern Districts of New York from filing discovery documents with the Clerk's Office, the Second Circuit noted that Rule 5(d) functions to ensure public access of discovery materials.  *In re Agent Orange,* 821 F.2d at 146.  As Judge Mansfield, then Chairman of the Advisory Committee on Civil Rules, noted, the drafters of Rule 5(d):
anticipate[d] (and so stated in our committee notes accompanying the proposal) that a judge would not be expected to excuse parties from filing materials in any case in which the public or the press has an interest, such as a Watergate or similar scandal.  Moreover, should the public importance of the material not

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works