appear until after filing has been excused, it is expected that the judge, upon motion of the press or other interested persons, would order the parties to file the documents for inspection.
*10 N.Y. Times, Aug. 2, 1980, at 20, col. 4 (letter to the Editor) (quoted in *In re Agent Orange, 821 F.2d at 146*).

In *Agent Orange*, Chief Judge Weinstein, before approving a settlement between the parties, held Rule 23(e) fairness hearings throughout the United States. At one such hearing representatives of the Vietnam Veterans of America ("VVA") requested access to all the Agent Orange discovery materials still subject to the protective orders. The VVA was directed to move to have the protective order lifted. Subsequently, the VVA's motion was granted. On appeal the Second Circuit ruled that Rule 26(c) and Rule 5(d) of the Fed.R.Civ.P. "require that discovery is presumptively open to public scrutiny unless a valid protective order directs otherwise...." *In Re Agent Orange* at 145 (quoting *In Re Agent Orange Product Liability Litigation, 104 F.R.D. 559, 568 (E.D.N.Y.1985)*). Moreover, the court held that "access is particularly appropriate when the subject matter of the litigation is of especial public interest...." *In Re Agent Orange, 821 F.2d at 146*.

The Journal has a presumptive right of access to the discovery documents produced in the Havens litigation, based on Fed.R.Civ.P. 26(c) and 5(d). Having such a presumptive right, the Journal must be allowed access to the documents provided there is not a good cause basis for the Protective Order. Thus, it is necessary to determine whether good cause exists for sealing the subject discovery documents.

D. *Rule 26(c) "Good Cause" Requirement*

In seeking modification of the Protective Order, the Journal contends that the requisite finding of good cause was never made. MetLife asserts that a finding of good cause was made on three separate occasions. Therefore, it contends that the Protective Order is valid and should not be modified.

Fed.R.Civ.P. 26(c) places the burden of showing good cause on the party seeking the protective order. The moving party must show an adequate reason, by a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986)* (quoting *United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)*); See also 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2035 (1970 & Supp.1993). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone, 785 F.2d at 1121*.

Materials that contain "a trade secret or other confidential research, development, or commercial information" are subject to protective orders. Fed.R.Civ.P. 26(c)(7). Furthermore, a protective order may be granted in order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c). However, as the Third Circuit noted:
  [B]ecause release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.
  *11 *Cipollone, 785 F.2d at 1121*. Moreover, the annoyance and embarrassment rationales are normally not available to a business. In *Cipollone*, the Third Circuit held:
  [A]s embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue a protective order on this ground.... [T]o succeed, a business will have to show with some specificity that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                                        Page 10
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

    the embarrassment resulting from the dissemination of the information would cause a significant harm to its competitive and financial position.
    *Id.*

    This Court regards the Third Circuit's requirement of a specified showing of significant harm to a business' "competitive and financial position" as consistent with the objectives of 26(c), as well as the Second Circuit's ruling in *In re Agent Orange*. Allowing businesses to satisfy good cause without such a showing would effectively undermine the good cause requirement, as businesses would be able to claim good cause for any internal documents that portrayed the business in an unflattering light.

    In the instant case, MetLife contends in wholly conclusory fashion that its claim "of injury to privacy or reputation" is sufficient for a showing of good cause. (Defendant's Memo of Law at 14.) It is not. MetLife fails to specify the nature or extent of injury it contemplates release of the sealed documents would bring about, and accordingly fails to establish good cause.

    Nonetheless, MetLife asserts that good cause was previously found in "at least three Court hearings concerning the subject Protective Order...." (*Id.* at 12.) Defendant cites the pretrial conference of February 26, 1993 with Judge Weber and the parties in the Havens litigation as supporting the notion that the judge thought a protective order "would be appropriate to limit the use of this information and protect it from disclosure outside the context of the lawsuit." (Hall Aff. ¶ 8.) However, the portion of the transcript submitted to this Court reveals that Judge Weber was concerned primarily with resolving the parties' discovery disputes and expediting the discovery process. [FN4] There is no indication that Judge Weber made a finding at that conference regarding the nature or extent of harm that would result from the release of the documents.

    Similarly, there is no record of a finding made as to the subject documents at the April 29, 1993 pretrial conference ("April Conference"). The two parties in the Havens litigation had already agreed to a protective order by the April Conference. The parties had also agreed on the method of designating documents subject to the protective order. The sole dispute remaining to be resolved at the April Conference was related to a number of documents MetLife sought to have designated "extra-confidential." In so doing, MetLife sought to have these "extra-confidential documents" withheld from the plaintiff, Havens, and shown only to his attorney. MetLife, stating its justification for these extreme measures, asserted that:

    *12 our concern is that Mr. Havens, who has been talking to the press from what we're able to read in these newspaper articles during the pendency of this lawsuit, could expose us to irreparable injury by way our reputation, and it would be a harm that we would never be able to retrieve...."

(Zajac Aff. Ex. C April Conference at 4-5.) [FN5] However, notwithstanding MetLife's conclusory allegations, there is no indication in the record of the April Conference that MetLife made the required showing of significant business harm with any degree of specificity. Nor did the court's findings of the April Conference meet the threshold requirements of good cause. The sole determinations made at the April conference were regarding the "extra-confidential" designation of documents, as the parties in the Havens litigation had already agreed to most of the terms of the Protective Order. Judge Weber, in making his determination regarding the "extra-confidential" designation, stated:

  I'm trying to discover the prejudice to any side. I mean, it's all a balancing act on our part to try to be fair to both sides and not to needlessly expand the litigation to other litigation. And what I'm trying to do is balance the rights of the parties here...."

(Zajac Aff. Ex. C April Conference at 11-12.)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
23 Media L. Rep. 1993  
(Cite as: 1995 WL 234710 (S.D.N.Y.))

Page 11

Furthermore, the terms of the Protective Order negate the possibility that a finding of good cause was made as to the sealed documents. The scope of the Protective Order extended to all party and non-party documents produced for discovery. (Protective Order at 1.) Moreover, any party, under the provisions, could designate its own or a non-party's discovery material as subject to the Protective Order. (Id. at 2.) The Protective Order provided that the parties could "only" seal such documents that would reasonably be subject to protection under Fed.R.Civ.P. 26(c). (Id.) However, whether the designation met the requirements of Rule 26(c) was determined not by the judge, but left to the "good faith" of the party making the designation. (Id.) The Order did provide that a party had the right to challenge a particular designation. (Id. at 5.) However, the burden was on the party challenging a designation to show a "particularized need for such material for the restrictions to be removed." (Id.) In sum, the Protective Order allowed the parties to make their own good cause findings subject only to their good faith belief that its designations complied with Fed.R.Civ.P. 26(c). Moreover, the order improperly shifted the burden of showing particularized need to the party challenging the designation, contrary to the express provisions of Fed.R.Civ.P. 26(c). [FN6]

The facts in the instant case dramatically underscore why specific findings of good cause are necessary. The inherent pressures of litigation will often provoke parties to consent to protective orders during discovery. Frequently, a party will agree to the opposing party's request for a protective order so as to expedite the discovery process and reduce the cost of litigation. There are plainly many incentives for parties to agree to a protective order, while there are few incentives for parties to oppose one. Moreover, a party consenting to a protective order will rarely, if ever, take into consideration the public's interest in such matters. In such cases, the good cause requirement acts as a guardian of the public's right of access to discovery documents by requiring parties to make a threshold showing before documents will be withheld from public view.

E. Reliance and the "Martindell" Standard

*13 MetLife asserts that it produced documents for discovery in reliance of the Protective Order. Therefore, a party seeking to modify or vacate the Protective Order must show that the order was improvidently granted or some other extraordinary circumstance or compelling need. (Defendant's Memo of Law at 15.) MetLife states that "[r]eluctant to upset the settled expectations of parties by eliminating the previously granted protection, Courts in this Circuit place the burden of proof on the entity ... seeking to justify modification of that Order." (Defendant's Memo of Law at 15.)

The required showing of "improvidence," "extraordinary circumstance" or "compelling need" developed in Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 296 (2d Cir.1979), has been subsequently applied by courts using two distinct rationales. One line of cases has applied the Martindell standard when the government, as a nonparty, has sought to intervene for the purpose of modifying a protective order. See e.g. Minpeco S.A. v. ContiCommodity Servs., Inc., 832 F.2d 739, 742 (2d Cir.1987); Palmieri v. New York, 779 F.2d 861, 866 (2d Cir.1985). Alternatively, a second line of cases has applied the Martindell standard when a party has produced documents or given testimony in justified reliance of the protective order. See e.g. In re Grand Jury Subpoena Dated April 19, 1991, 945 F.2d 1221, 1225 (2d Cir.1991); cf. Westchester Radiological v. Blue Cross/Blue Shield, 138 F.R.D. 33, 35 (S.D.N.Y.1991). However, in the instant case, the Martindell standard is not applicable regardless of which rationale is employed.

In Martindell, the federal government, as a nonparty, sought access to pretrial depositions taken as part of a private civil action. The court ruled that:

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Jan. 29. 2004 12:59PM    No.7190   P. 31
Case 3:03-cv-00369-DJS   Document 29-7   Filed 01/30/2004   Page 4 of 8

Not Reported in F.Supp.                                                    Page 12
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, none of which appear here, a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government...." [FN7]
Martindell, 594 F.2d at 296 (citing, inter alia, GAF Corporation v. Eastman Kodak Company, 415 F.Supp. 129, 132 (S.D.N.Y.1976)). The court held that a higher threshold to modify a protective order relied upon by the producing party was necessary to effectuate important policy considerations. The court ruled that protecting the reliance interest of the parties functioned to "secure the just, speedy, and inexpensive determination" of civil disputes, Fed.R.Civ.P. 1, "by encouraging full disclosure of all relevant evidence." Martindell, 594 F.2d at 295.

However, the Second Circuit provided a second rationale for applying a higher threshold in Martindell. The court held that the government's "awesome powers" of investigation, "render[ed] unnecessary its exploitation of the fruits of private litigation." Martindell, 594 F.2d at 296 (citing GAF, 415 F.Supp. at 132). The court noted that the government had available a number of means to further its investigations. Id. The government possessed the power to institute grand jury proceedings, issue subpoenas, and offer immunity in exchange for testimony. Id. Thus, the court held that, in view of these powers, "an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation...." Id.

*14 Subsequent decisions have seized upon the government's attempt to modify the protective order in Martindell as the determinative factor in triggering its standard. In Palmieri v. New York, the Second Circuit called into question whether Martindell was applicable to parties other than the government. The court emphasized that it was the nature of the government's investigatory powers that triggered Martindell. The court held that "what was critical to Martindell and GAF was the fact that 'the party seeking access ... was the federal government, which in each case had at its disposal special investigatory powers not available to private litigants....' " Palmieri, 779 F.2d at 866 (quoting Wilk v. American Medical Association, 635 F.2d 1295, 1299-1300 (7th Cir.1981)). Similarly, the Palmieri Court held that a state's power to subpoena persons and documents before a grand jury required the state to show "improvidence" or "extraordinary circumstances" or "compelling need" before modification of a protective order would issue. Palmieri, 779 F.2d at 866.

In Minpeco S.A., the court also stressed the fact that the government was the nonparty seeking modification of the protective order. Applying the Martindell standard to the Commodity Futures Trading Commission's attempt to modify a protective order, the Court held that:
Martindell establishes that in balancing the need of the government for access to discovery materials against the continued integrity of the protective order, the government must show a "compelling need" to overcome the systemic needs reflected in the protective order.
Minpeco S.A., 832 F.2d at 742. The Court reiterated the concerns expressed in Martindell and Palmieri in referring to the Commodity Futures Trading Commission's "awesome powers of investigation" as a basis for its conclusions. Id. at 743.

These cases have restricted Martindell 's application to instances where the government, although armed with broad investigative powers, nevertheless attempts to exploit "the fruits of private litigation." Martindell, 594 F.2d at 296. See also Public Citizen, 858 F.2d at 791 ("[o]utside the area of government intervention, courts have applied much more lenient standards for modification.") (citing Wilk v. American Medical Ass'n, 635 F.2d 1295, 1300 (7th Cir.1980)).

Applying this rationale to the instant case, the Journal need not show "improvidence," "extraordinary circumstance" or "compelling need." The Journal is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                                                                    Page 13
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

a private litigant seeking modification of the Protective Order. As *Palmieri* suggests, the *Martindell* standard does not apply in such instances. The burden continues to rest with MetLife to show that the Protective Order had been based and continues to be based on good cause.

To be sure, a number of courts have adopted *Martindell* 's reliance rationale in applying a higher threshold for the modification of a protective order. These courts have held that a higher threshold is particularly appropriate where a party clearly and justifiably relied on the protective order in the production of discovery. *Martindell*, 594 F.2d at 295-96; *see also In Grand Jury Subpoena Dated April 19, 1991*, 945 F.2d at 1225 (citing *Andover Data Services v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1084 (2d Cir.1989)); *In re Agent Orange*, 821 F.2d at 147; cf. *Westchester Radiological v. Blue Cross/Blue Shield*, 138 F.R.D. at 35 (holding that the *Martindell* standard is meant to protect a party's expectation of privacy when testimony was given or documents were produced in reliance of a protective order). [FN8]

*15 Thus, this alternative rationale requires the Court to determine the extent and reasonableness of a party's reliance on the protective order. In *Agent Orange*, the Second Circuit held that "appellants in the Agent Orange litigation could not have relied on the permanence of the protective order." 821 F.2d at 147. The court held that the very terms of the protective order applied solely to the pretrial stages of the litigation. *Id*. The judge "specifically indicated that the confidentiality issue would be reconsidered at the commencement of the trial." *Id*. The court ruled, therefore, that "[a]ny reliance on such a sweeping, temporary protective order simply was misplaced." *Id*. Similarly, in *Public Citizen v. Liggett Group*, the First Circuit held that reliance on blanket protective orders was unwarranted. In rejecting the defendant's claim that it had relied on the blanket protective order, the court held that:

> the protective order ... was a blanket protective order, that is, it was an order extending broad protection to all documents produced by Liggett, without a showing of good cause for confidentiality as to any individual documents. Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, *they are by nature overinclusive and, therefore, peculiarly subject to later modification.*

*Public Citizen*, 858 F.2d at 790 (citing *Manual for Complex Litigation*, Second § 21.431, at 53 & n. 60 (1985) (emphasis added). *See also Beckman Industries*, 966 F.2d at 476 (holding reliance on a stipulated blanket protective order will be less, because it is by nature overinclusive).

In the instant case, MetLife's professed reliance on the permanence of Judge Weber's Protective Order is unrealistic. I accept that the Protective Order did contemplate continued protection of the subject documents beyond the final disposition of the Havens litigation. (Zajac Aff. Ex. B Protective Order at 7.) [FN9] However, either party was afforded the right to challenge the other party's designation of documents subject to the Order. (*Id*. at 5.) If the parties were unable to reach agreement regarding the status of the documents in question, the Court was to render a ruling on their status. (*Id*.) Thus, the production of documents was not made in reliance of the Order's permanence regarding specific documents, since the parties knew that a subsequent court order could unqualifiedly modify a party's designation. The Order preserved the right of any party to challenge a document's designation at any time. [FN10] Moreover, Judge Weber's Order was a blanket protective order. Thus, MetLife had even less reason to rely on it.

Even if MetLife were found to have reasonably relied on the Order, continued protection of the documents would amount to "extraordinary circumstances," as contemplated by the Second Circuit. In *Agent Orange*, the Court held that the provisions of a protective order similar to those in the instant case met the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

threshold showing of "extraordinary circumstances." *In re Agent Orange, 821 F.2d at 147-48.* The protective order permitted the parties to designate documents subject to the protective order, which in the party's own estimation contained "confidential developmental, business, research or commercial information." *In re Agent Orange, 821 F.2d at 142.* Citing the terms and scope of the protective order, the court concluded that:

*16 the exceptionally pervasive protection granted appellants during the pretrial stages of this litigation, coupled with the fact that appellants never were required to show good cause as mandated by Rule 26(c), amounts to the extraordinary circumstances contemplated in our prior decisions.

*Id.* at 148.

As in *Agent Orange*, the parties in the Havens litigation were never required to demonstrate good cause in order to place documents under protective seal. The parties needed only to designate discovery materials as confidential in order to subject them to the Protective Order. In addition, the scope of the order extended to all documents produced by the parties and nonparties alike. The district court may have properly entered the order as a temporary measure to facilitate the discovery process. *In re Agent Orange, 821 F.2d at 148.* Thus, this Court need not reach the issue of whether the order was improvidently granted. However, continued protection of the documents would clearly meet the *Martindell* threshold as contemplated by the Second Circuit in *Agent Orange.* Cf. *Id.* (whereas the unusual scope of the Agent Orange litigation warranted imposition of the orders, "had the district court not lifted the orders, we would be compelled to find that the orders had been improvidently granted because the district court never required appellants to make the requisite good cause showing").

Finally, the Journal makes a motion to file all documents in the Havens litigation with the Clerk of the Court. This motion is denied as the Havens litigation has been settled and the Court does not contemplate that any additional documents in connection with the Havens litigation will be filed. If for some reason additional documents are filed, the Court may review its decision.

This Court finds that a good cause finding was never made regarding the documents sealed by the March 23, 1993 Protective Order. Therefore, the Protective Order is modified to require defendant MetLife to show good cause, as required by Fed.R.Civ.P. 26(c), for any and all documents it seeks to have remain sealed. An index of the documents sought to be kept under seal must be served upon counsel for the Journal. All such requests shall be made within 60 days of the date this order becomes final. Any documents not designated confidential as of that time shall be unsealed. The Court will then review the documents designated confidential in order to determine whether they are entitled to remain sealed pursuant to Rule 26(c). Defendant is reminded that spurious designations may be subject to sanctions. The designation of a document as confidential will be viewed as equivalent to a motion for protective order and subject to the sanctions of Fed.R.Civ.P. 26(g). *See Manual for Complex Litigation Second,* § 21.431 (1985).

*Conclusion*

For the forgoing reasons, the application of the Journal's motion to intervene is granted. The Journal's motion to modify the Order of Protection is granted provisionally and in contemplation of further proceedings consistent with this Opinion. The motion to file documents with the Clerk of the Court is denied.

*17 It is SO ORDERED.

FN1. The Court notes that only a portion of the February 26, 1993 pretrial

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp. Page 15
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

conference was provided with defendant's papers.

FN2. The court also ruled that some form of notice was required before excluding the public from judicial proceedings. On the question of notice the court held:
Since by its nature the right of public access is shared broadly by those not parties to the litigation, vindication of that right requires some meaningful opportunity for protest by persons other than the initial litigants, some or all of whom may prefer closure. Moreover, it seems entirely inadequate to leave vindication of a First Amendment right to the fortuitous presence in the courtroom of a public spirited citizen willing to complain about closure. Some form of public notice should be given, since it is important, perhaps especially so, to afford an opportunity to challenge courtroom closure accomplished in the absence of spectators.
In re Herald Co., 734 F.2d 93, 102 (2d Cir.1984).

FN3. Fed.R.Civ.P. 26(c) provides, in pertinent part, that "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...."

FN4. Addressing the subject of the parties' discovery disputes, the judge stated:
I would strongly urge that you settle these disputes, and if it's necessary for a protective order limiting the use of this information ... that is a way that may be used to solve the problem. But that's the way we can--I think under due process solve a problem where the documents may be sensitive and you don't want public disclosure, and in that case, we limit it to attorney's eyes only...."
(Hall Aff. ¶ 9 (quoting Transcript of February 26, 1993 at 38-39)).

FN5. Counsel for MetLife, at a later point, stated:
I think the sense of sensitivity here probably deals with the way the documents are prepared and the thought process of the people who wrote them, and I think the facts themselves are probably duplicated in other documentation. So ... we're not talking ... about factual revelations.
(Zajac Aff. Ex. C April 29, 1993 Conference at 7.)

FN6. MetLife offers a third instance where a finding of good cause was ostensibly made. However, the Court is reluctant to consider the cited two paragraph excerpt of a transcript from a October 27, 1993 Hearing to Amend the Protective Order before Magistrate Judge Steinberg provided in MetLife's papers. Suffice it to say that the Magistrate Judge's concern with the "potential of damaging [the parties'] reputation[s] ...", Hall Aff. ¶ 18, did not meet the threshold showing of significant harm to a business' "competitive and financial position" with the required degree of specificity.

FN7. However, as the government was the only party in the case seeking modification of the protective order, reference to third parties other than the government must be considered beyond the court's holding in the case and, therefore, not controlling.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
23 Media L. Rep. 1993
(Cite as: 1995 WL 234710 (S.D.N.Y.))

FN8. However, the court in *Westchester Radiological v. Blue Cross/Blue Shield*, 138 F.R.D. 33, 37 (S.D.N.Y.1991) noted that "[w]hether [*Martindell*] represents current law after *Agent Orange* is open to question...."). The court in *Westchester Radiological* ultimately did not reach the issue of *Martindell* 's validity and neither does this Court.

FN9. The Order provided that:
No later than thirty days after the unappealable or unappealed final judgment or settlement of this action, all Confidential and Extra- Confidential Discovery Material ... shall be destroyed by shredding or burning or be returned to the producing party....
(Zajac Aff. Ex. B Protective Order at 7.)   The Order further provided that:
Neither the termination of this action nor the termination of employment of any person who had access to any Confidential or Extra-Confidential Discovery Material shall relieve any person from the obligation of maintaining both the confidentiality and the restrictions on use of anything disclosed pursuant to this Order.
(Zajac Aff. Ex. B Protective Order at 8.)

FN10. The Order provided that:
failure to challenge a designation shall not constitute an admission by any party in this or any other proceeding that the designated material is in fact confidential and rightfully belongs to the producing party.
(*Id.* at 5-6.)

1995 WL 234710 (S.D.N.Y.), 23 Media L. Rep. 1993

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works