UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LYNN B. KANIOS | : |
| | : CIVIL ACTION NO.: |
| Plaintiff, | : 303 CV 369 (DJS) |
| | : |
| V. | : |
| | : |
| UST, INC. and MARK ULIASZ | : |
| | : JANUARY 29, 2004 |
| Defendants. | : |

**PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION TO AMEND COMPLAINT**

*PRELIMINARY STATEMENT*

In a vitriolic attack on the integrity of the undersigned, defendant's counsel asserts that plaintiff has engaged in an "unwarranted, unreasonable and prejudicial effort" (defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend Complaint and Request for Sanctions dated January 22, 2004 (hereinafter "Defendants' Memo") at 6), "blatantly misled the Defendants (Id.), undertook an "inexcusable, patently intentional and bad faith delay" (Id.) and otherwise acted in an unprofessional manner. As is set forth more fully below, defendants' accusations are without basis, and the granting of the Motion to Amend is appropriate.

*FACTS*

Plaintiff hired the undersigned to take this case over from predecessor counsel who had represented plaintiff through the CHRO process over a period of two years. A request for right-to-sue letters was sought, and upon receipt of same, this action was immediately commenced. The causes of action asserted were those of prior counsel, as they were fully supported by the record developed during the administrative process. Discovery has now confirmed the merit of

these claims and the wrongful conduct of defendants. Indeed, a clearer case of retaliation could hardly be imagined.

During discovery, it also became apparent, through records disclosed by defendants and medical professionals, as well as the testimony of defendants' Director of Human Relations, that a willful breach of the Family Medical Leave Act ("FMLA") was a by-product of the retaliatory discharge of plaintiff. This became apparent through documents eventually produced by defendants including the actual medical records of defendants' Employee Assistance Program ("EAP") physician to which plaintiff was referred by defendants (these documents were requested by plaintiff on June 12, 2003 and not produced by defendants but were directly obtained by the physician on or about December 11, 2003), and the notes of defendants' Director of Human Relations (not produced by defendant until January 6, 2004 allegedly through oversight). The documentary evidence was buttressed by the testimony of that same Director of Human Relations taken the day after her notes were produced, January 7, 2004.[1] On questioning her about her notes, that Director of Human Resources, Ms. Nella Viesta, confirmed the following:

> Q   Ms. Viesta, before the break we were about to start page D0679 of Exhibit P, the note dated March 20, '01. Do you see that?
> A   Yes, I do.
> Q   What caused you to write this note?
> A   A telephone conversation I had with Lynn.
> Q   So Lynn called you?
> A   Yes, she did.
> Q   What did she say?
> A   Lynn -- reading from the notes, "Lynn Kanios called NRV, will be out on a two-week medical leave. She stated she doesn't know if she can return to her department. We talked about other options, posting and applying. Lynn stated she was going back to the doctor on Friday. I informed Mark and Tim of Lynn's absence."
> Q   Before we get to the next day, did you consider that leave under the Family Medical Leave Act?

---

[1] These documents produced on January 6, 2004 fell within the document requests of plaintiff dated June 12, 2003. Moreover, the deposition of defendants' Director of Human Resources was originally sought in the fall of 2003 but was not scheduled by defendants until January 7, 2004.

2

    A   Yes, I did.

(Deposition of Nella Viesta taken January 7, 2004 (hereinafter "Viesta Depo."), P123 L12 to P124 L4[2] (excerpt attached hereto as Exhibit A).)

    Plaintiff then drafted her Motion to Amend, proposed Amended Complaint, and immediately filed for permission with this Court to add a single count directed toward the FMLA violation. There has been no inexcusable delay or neglect, and absolutely no bad faith or "scapegoating" as accused by defendants' counsel. (See Defendant's Memo at page 2.)

    Certain additional assertions by defendants' counsel need to be addressed specifically:

    1.    Defendants' counsel's assertion that plaintiff merely moved to amend to somehow prejudice defendants "[i]n a transparent attempt to justify her flagrant disregard for the Court imposed amendment deadline" is specious. In what plaintiff thought was a cooperative and civil effort with defendants, plaintiff has consented to no less than four motions all sought by defendants[3], to extend the discovery deadline in this case. (See the following motions, Pleading No. 12 dated July 11, 2003, Pleading No. 14 dated August 13, 2003, Pleading No. 18 dated November 14, 2003, and Pleading No. 20 dated January 13, 2004.) Thus, there is no prejudice, as the current discovery deadline is March 3, 2004 and defendants have *yet* to complete plaintiff's deposition, despite their claim to having to "reopen" that deposition. Moreover, plaintiff is now merely seeking to add a cause of action that by defendants' own admission ***defendants were aware of from the inception of this litigation***. (See Defendants' Memo at 5 ("Plaintiff had set forth sufficient allegations in the initial Complaint on which to base the claim she is seeking to now add.").) Thus, while plaintiff believes she has moved as judiciously possible given the

---

[2] ("P__ L___" refers to page and line number.) This was accompanied by testimony contradicting her notes, which stated that plaintiff indicated she would not be returning; Ms. Viesta stated, however, that plaintiff did not know exactly *when* she would return. (Viesta Depo. P128 L13 to P129 L17 (also part of Ex. A hereto).)

3

available information and the need to avoid baseless or unwarranted claims, defendants apparently contend they were on notice of these claims all along.

2.　　Plaintiff had no obligation, as implied by defendant, to disclose attorney work product by discussing with defendants the possibility of a viable FMLA claim and resulting motion to amend prior to confirming the existence of such a viable claim and seeking such amendment. While the undersigned has attempted to cooperate with defendants' counsel, it has not been without some conflict. Indeed, differences over discovery necessitated a telephonic court conference to resolve certain discovery disputes. (See Court Entry Nos. 14 and 17 regarding a September 18, 2003 conference in which discovery disputes were discussed.)

3.　　How defendants are prejudiced because it "defended four depositions of defense witnesses" is puzzling. Moreover, of the four witnesses, one had absolutely no connection with defendants (indeed, defendants did not even know who he was), two were current employees, and another was a *former* employee that, despite clear case law to the contrary, defendants instructed not to answer any questions regarding post-employment contact with defendants. See, e.g., Chambers v. Capital Cities/ABC, 159 F.R.D. 441 (S.D.N.Y. 1995) (noting that "defense strategy in the litigation is an impermissible subject for exploration with current (or former) employees. Anything said to the witness during preparation for testimony and which would influence the witness' testimony is, however, a legitimate topic of exploration...."); see also Peralta v. Cendant Mobility, 190 F.R.D. 38 (D. Conn. 1999) (Arterton, J.) ("no privilege applies to a communication between employer's counsel and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness's testimony, consciously or unconsciously.").[4]

---

[3] Of the four motions for extensions of time, three were filed by defendants and the fourth was a joint motion, however it was defendants who requested the extension sought from the court.
[4] The deposition questioning was limited by defendants' attorney as follows:

4

4. Defendants have taken only two depositions, **one of plaintiff which defendants left open and did not complete**, and one of plaintiff's economic damages expert. Thus, there is no reason to "reopen" the plaintiff's deposition. The plaintiff's expert report is not impacted by the additional cause of action sought. Thus, defendants' contention its "deposition questions were carefully prepared to elicit information" to make arguments in a summary judgment motion can refer only to plaintiff's incomplete deposition. This does not support a claim of prejudice.

> Q. Are you scheduled to receive money from UST in the future?
> MS. GAMBARDELLA: You can answer that yes or no.
> A. Yes.
> Q. As part of your settlement, are you required to cooperate with UST in the defense of litigation against it?
> MS. GAMBARDELLA: I instruct the witness not to answer that.

(Deposition of Robert G. Rentz taken December 18, 2003 (hereinafter "Rentz Depo.) P62 L4 –L13 (excerpts attached as Exhibit B).)

> Q. The subpoena was sent to Mr. Horner correct?
> A. Correct.
> Q. And Mr. Horner was representing you, correct?
> A. Personally.
> Q. It was a personal subpoena, correct?
> A. Yes.
> Q. It is not a subpoena to UST, it is a subpoena to you?
> A. Yes.
> Q. Why did you feel compelled to call UST?
> A. Because it was about a situation that occurred when I worked for UST
> Q. Did you ask that UST provide representation?
> A. I asked them for guidance.
> Q. Did they suggest that they provide counsel for you?
>
> MS. GAMBARDELLA: This now goes into communication with this gentleman. This gentleman is being represented as a former executive of UST. He's been inconvenienced to talk about a matter that arose while he was an executive at UST. Companys represent former executives all the time, Mr. Lucas. All the time. Every day. He's already answered it was not part of the settlement that it was required that I represent him.

(Rentz Depo. P64 L1—P65 L4 (Ex. B).)

5

5. There is no basis for defendants' assertion it was somehow "blatantly misled" during discovery in this case." (Defendants' Memo at 6.) Defendants cite to no facts in support of such a characterization of plaintiff's conduct.

6. There is no basis for defendants' assertion of "bad faith" or intentional misconduct by plaintiff or the undersigned. (Defendants' Memo at 6.) Again, defendants cite to no facts in support of such a contention.

7. As indicated in Plaintiff's Opposition to Motion for Sanctions of even date herewith, it is defendant who has acted without justification. Upon receiving plaintiff's Motion to Amend, defendants unilaterally cancelled all pending depositions. This meant canceling four depositions, which had been scheduled for over a month, including one scheduled for that very week. This conduct by defendants is outlined in the letter from defendants' attorney to the undersigned attached hereto as Exhibit C.

8. The undersigned sought reconsideration of this rather outrageous position. (See letter of the undersigned to defendants' counsel attached as Exhibit D.) This led to the exchange of further e-mails (see Exhibit E) in which defendants "offered" to allow the depositions to proceed, but only if the undersigned would agree that no questions relating to the FMLA claim could be asked and plaintiff would forfeit any right to ask such questions at a later date. Obviously this "proposed deal" could not be accepted, as it would unduly prejudice the plaintiff.

9. Finally, the three-year statute of limitations for willful violation of the FMLA does not expire until April 10, 2004. A denial of the Motion to Amend would merely lead to the filing of a second action and the possible consolidation of that action with this one. This would merely constitute a waste of time, effort and judicial resources.

## ARGUMENT

### I. PLAINTIFF HAS SHOWN THE REQUISITE GOOD CAUSE FOR LEAVE TO AMEND HER COMPLAINT.

#### A. *The Deadline For Leave To Amend Should Not Be Strictly Construed.*

Defendants argue that Rule 16(b) and the expiration of the prior deadline for amending having expired mandate denial of plaintiff's motion. However, the prior deadline was only weeks into an already extended discovery schedule and was presumably directed toward amendments as of right or with consent under rule 15(a). There is no basis for a complete prohibition of an amendment simply because of a scheduled deadline for consensual amendments. Indeed, this Court has readily granted a plaintiff's motion for leave to file an amended complaint well beyond any such scheduling deadlines. Senich v. American-Republican, Inc. 215 F.R.D. 40, 42 (D. Conn. 2003) (Squatrito, J) (granting leave to amend well after filing deadline noting plaintiff's decision to delay the filing of the amendment was not the result of any bad faith). Indeed, the Supreme Court has recognized that an amendment may be permitted at any point during the course of litigation. See Foman v. Davis, 371 U.S. 178, 181 (1962) ("in the interest of justice," leave to amend may be necessary even at post-judgment stage). "This Circuit has permitted a party to amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint." Miller v. Selsky, 234 F.3d 1262, 1265 (2nd Cir. 2000); see also Hanlin v. Mitchelson, 794 F.2d 834 (2d. Cir. 1986); Topps Company Inc., v. Cadbury Stani S.A.I.C., 2002 WL 31014833 (S.D.N.Y) (attached as Exhibit F).

#### B. *Plaintiff's Proposed amendment Is Timely And Without Delay.*

The defendants' first claim undue delay and "scapegoating" due to plaintiff's failure to communicate her intentions earlier. The Second Circuit has made it clear that delay, without more, cannot be the basis to deny a motion to amend and has routinely excused delays exceeding

years. See, e.g., Richardson Greenshield Sec., Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2nd Cir. 1987) (granting motion to amend where delay was not intentional).

Similarly, in Topps Company Inc., v. Cadbury Stani S.A.I.C., 2002 WL 31014833 (S.D.N.Y) (Ex. F hereto), the court held that plaintiff's "delay" in making its motion to amend its complaint was not in any way "undue" or unreasonable because plaintiff was unaware of its claim until it deposed certain parties, just prior to its request to make its motion to amend adding additional claims. Moreover, the Topps court noted that the defendant offered no specific evidence of how this delay would work to its detriment.

Moreover, in Concerned Citizens of Belle Haven v. The Belle Haven Club, 2002 WL 32124959 (D. Conn. 2002) (Nevas, J), the court denied defendant's opposition to plaintiff's motion to amend its complaint because some of the delay was attributable to defendant for its multiple requests for extensions of time.

In the instant case, not only have defendants themselves moved for three of the four extensions of time, but they also requested the only extension that was jointly filed, which was merely consented to by plaintiff out of courtesy. More importantly, on January 6, 2003, defendant provided plaintiff with materials enabling her to confirm the basis for her additional theory of liability. These materials had been requested on June 12, 2003, approximately six months *prior* to their actual delivery. In addition, these materials, coupled with the information gathered during the subsequent deposition of defendants' Director of Human Relations, underscore the fairness in plaintiff's filing of her motion to amend. Lastly, defendants have offered no specific evidence of how plaintiff's alleged "delay" works to their detriment. Rather, defendants merely launch conjectural allegations of being "blatantly misled" despite plaintiff's illustrated goodwill.

### C.  *Plaintiff's Amendment Will Cause No Prejudice To Defendants.*

Defendants' next claim is that they will be unduly prejudiced if the motion to amend is granted. In support of this position, defendants maintain they have expended resources defending the allegations in plaintiff's first Complaint. However, this argument of prejudice from the expenditure of resources was flatly denied in Concerned Citizens of Belle Haven v. The Belle Haven Club, 2002 WL 32124959 (D. Conn. 2002) (Nevas, J.) (Ex. G hereto). "Defendants' claim they have expended considerable resources defending the allegations...does not constitute prejudice warranting denial of amendment." Id. at *4. In denying defendant's opposition to plaintiffs' motion to amend its complaint, the court in Concerned Citizens looked to the "course" of the litigation. Id. The court reasoned that because the original complaint and the proposed amended complaint alleged similar violations, and since the proposed amended complaint advanced only new theories of liability which related to discriminatory acts and practices previously claimed against defendants, it could not now claim to be surprised or prejudiced.

In the instant action, plaintiff is now merely seeking to add a cause of action that, by defendants' own admission, *defendants were aware of from the inception of this litigation*. (See Defendants' Memo at 5 ("Plaintiff had set forth sufficient allegations in the initial Complaint on which to base the claim she is seeking to now add.").) In addition, plaintiff's original Complaint and proposed amendment not only consist of identical facts, but also seek to add only one additional theory of liability relating to the discriminatory practices already claimed against defendants. Therefore, defendants cannot now claim surprise or prejudice when defendants apparently were on notice of these claims all along.

### D.  *Failure To Grant Plaintiff's Motion To Amend Will Lead To Multiple Actions.*

Case law has recognized that even where the non-movant demonstrates prejudice, that prejudice must be balanced against the court's interest in litigating all potential claims in a single action. See, e.g., Bertrand v. Sava, 535 F.Supp. 1020, 1024 (S.D.N.Y.1982), rev'd on other

9

grounds, 684 F.2d 204 (2d Cir.1982); Henderson v. U.S. Fidelity & Guar. Co., 620 F.2d 530 at 534 (5th Cir. 1980), cert. denied, 449 U.S. 1034, 101 S.Ct. 608, 66 L. Ed.2d 495 (1980). Moreover, as was noted in Saxholm AS v. Dynal, Inc., 938 F.Supp. 120 (E.D.N.Y. 1996), "since [plaintiff] has indicated its intention to initiate a second action if leave to amend be denied, and since such an action would involve most of the exact same facts, circumstances, and questions of law as this action, denying leave to amend would simply multiply proceedings in this court with no apparent benefit to the parties." Id. at 124.

In the instant case, plaintiff will initiate a second action if leave to amend is denied[5], and since such an action would involve most of the exact same facts, circumstances and questions of law as this action, denying leave to amend would simply multiply proceedings in this Court with no apparent benefit to the parties.

## II. *AN AWARD OF FEES TO DEFENDANTS IS NOT WARRANTED.*

As mentioned above, defendants "cancelled" all discovery pending a ruling on plaintiff's Motion to Amend. This included four long-scheduled depositions. Attempts to stall this matter and to unilaterally cancel all discovery should not be countenanced by this Court. As set forth in Plaintiff's Opposition to Motion for Sanctions and Cross Motion for Fees, it is defendants' counsel who has acted inappropriately.

## *CONCLUSION*

For the foregoing reasons, plaintiff respectfully requests that this Court deny Defendants' Motion In Opposition To Plaintiff's Motion For Leave To Amend Complaint and Request for Sanctions in all respects, and award her fees and costs incurred in having to oppose the Motion.

---

[5] In Concerned Citizens of Belle Haven, 2002 WL 32124959 (D. Conn. 2002) (Nevas, J) (Ex. G hereto), the court, in footnote 1, stated "It is apparent that plaintiffs' intention in filing a new lawsuit was to preserve their claims in the event that they are denied permission to amend in this case."

By _____
Scott R. Lucas (CT00517)
Michel Bayonne (CT24628)
*Attorneys for Lynn B. Kanios*
Martin Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mbayonne@mlc-law.com

### CERTIFICATE OF SERVICE

    This is to certify that on this 29th day of January 2004, the foregoing was mailed, first class, postage prepaid, to:

Steven J. Younes, Esq.
Mary A. Gambardella, Esq.
Epstein, Becker & Green, P.C.
One Landmark Square
Stamford, Connecticut 06901-2681
Phone: (203) 348-3737

_____
Scott R. Lucas