United States District Court
District of Connecticut
FILED AT HARTFORD
February 3, 2004
Kevin F. Rowe, Clerk
By _____
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNN B. KANIOS, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03CU369 (DJS) |
| V. | : | |
| UST, INC. and MARK ULIASZ, | : | JANUARY 14, 2004 |
| Defendants. | : | *JURY TRIAL DEMANDED* |

### FIRST AMENDED COMPLAINT

Lynn B. Kanios, through her attorneys Martin, Lucas & Chioffi, LLP, hereby alleges as follows:

### *PRELIMINARY STATEMENT*

This action is brought by Lynn B. Kanios and seeks damages arising out of defendants' harassment, discrimination and retaliation during her employment in violation of Title VII and Connecticut state law, as well as violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*.

### *PARTIES*

1.  Lynn B. Kanios is a citizen of the State of Connecticut, currently residing in Wallingford, Connecticut.

2.  Defendant UST, Inc. ("UST") is a Connecticut corporation with its principal place of business in Greenwich, Connecticut, and at all times hereto was in the business of manufacturing and distributing smokeless tobacco products.

1

3. Defendant Mark ("Uliasz ") is UST's Purchasing Manager and plaintiff's former supervisor.

## JURISDICTION AND VENUE

4. Jurisdiction over the subject matter of this litigation exists under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. §1981a. As to those claims not arising under federal law but clearly so related to the claims in this action within the original jurisdiction of this Court, jurisdiction exists under the doctrine of supplemental jurisdiction as codified in 28 U.S.C. §1367.

5. Plaintiff timely filed administrative charges of discrimination and retaliation with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on August 21, 2001 and has received a Right to Sue letter from the EEOC dated February 18, 2003 as well as a Release to Sue from the CHRO dated December 9, 2002. Copies are attached hereto as Exhibits A and B, respectively.

6. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(1) and (2), as the unlawful conduct complained of herein took place within the District of Connecticut and both parties reside in the District.

## STATEMENT OF FACTS

7. Plaintiff began her employment with UST on March 6, 1995 when she was hired as a support staff secretary in UST's Employee Relations Department.

8. Plaintiff was promoted to the position of Associate Buyer in the purchasing department on July 21, 1997 and held this position until she was terminated on April 13, 2001.

2

9. At all times relevant hereto plaintiff performed her duties in an exemplary fashion and received positive feedback from her superiors.

10. Plaintiff's personnel file is devoid of negative reviews or comments, nor were any negative comments made to plaintiff with regard to her performance prior to her termination.

11. In 1998, plaintiff was told that she would be reporting to her new supervisor, Uliasz.

12. At this time, Uliasz, in his capacity as plaintiff's supervisor and UST's agent, began a course of harassment directed at plaintiff reflective of his bias and contempt for women in the workforce. His harassment took the form of repeated derogatory actions and comments about plaintiff's appearance, weight, eating habits and intelligence. Uliasz's comments included statements to plaintiff, upon her return from maternity leave, that he needed to "teach her [plaintiff] math 101 again...her thoughts are still at home...". Uliasz even went so far as to keep a small jar full of pennies which he labeled plaintiff's education fund. These exhibitions and comments were made not only to plaintiff directly, but were made in front of other employees as well as customers.

13. Incident to plaintiff's two pregnancies, Uliasz commented continuously that plaintiff "was really packing it [weight] on" and "was eating enough for two, and then some". These comments were continued through plaintiff's first pregnancy in 1998 and plaintiff's second pregnancy in 2000.

14. In early 2001, Uliasz's conduct reached its nadir when he shoved plaintiff out of his way in an attempt to get by her.

15. On numerous occasions throughout her employment plaintiff complained to Mr. Tim Howard, UST's Purchasing Director and the head of plaintiff's department, regarding Uliasz's harassment. Mr. Howard merely shrugged off plaintiff's complaints telling her simply to "give it right back to him". Plaintiff's notification to Mr. Howard of the harassment and derogatory comments was consistent with UST's sexual harassment complaint policy which states in relevant part: "…you [employee] should in most instances report such conduct [harassment] to your supervisor…" and "all supervisory and management personnel are expected to take immediate and appropriate action to prevent or stop any sexual harassment…. some examples of harassment include…derogatory or vulgar comments regarding a person's …sex…physical appearance…pushing" and "management will ensure there is no coercion, retaliation, intimidation, or harassment…against any Employee who registers a complaint."

16. In late January 2001, another employee realizing the gravity of the harassment befalling plaintiff complained to UST's human resources department on behalf of plaintiff about Uliasz's conduct.

17. Shortly thereafter, in early February plaintiff met with UST's human resources director, Nella Viesta, to discuss her concerns. Plaintiff was assured that she would not have to confront Uliasz unless she was comfortable, and only then with representation in the form of a human relations representative, a mediator, or another person designated to support her position.

18. Uliasz, unaware of the most recent complaints against him gave plaintiff a positive performance review on February 7, 2001.

19. Contrary to the representations and assurances made by human resources, on or about February 16, 2001, plaintiff was summoned into a meeting to discuss her complaints of harassment in which only Mr. Howard and Uliasz were present.

20. On February 21, 2001 plaintiff's counsel wrote, Richard Kohlberger, Vice President of UST's human resources department a letter specifically concluding that Uliasz's conduct and treatment of plaintiff appeared to violate Title VII of the Civil Rights Act of 1964 and raised the possibility of a claim for sexual harassment. This letter also asked that plaintiff's counsel be present for any future meetings between UST and plaintiff regarding her complaints concerning Uliasz.

21. However, despite this letter UST held a subsequent meeting on or about February 27, 2001 between plaintiff, Uliasz, Mr. Howard, and Ms. Viesta, which resulted in the characterization of plaintiff's complaints as problems in her performance.

22. As a result of Uliasz's abusive conduct and UST's failure to appropriately or adequately address plaintiff's complaints consistent with its representations and its published policy, plaintiff manifested symptoms of anxiety and depression for which she began taking medication.

23. In March 2001 plaintiff was required by UST to meet with Drs. Jane Hannifin and Lisa Trencher, both mental health specialists affiliated with UST, to discuss her condition. Drs. Hannifin and Trencher recommended that plaintiff be put on medical leave for severe psychological distress. UST encouraged plaintiff to take such leave, which began on or about March 20, 2001, assuring and representing to her that it was for her own good and that she would be allowed to return to work.

24. On or about March 21, 2001, UST received a second letter from plaintiff's attorney again stating that plaintiff was the victim of discrimination and requested that he and UST discuss means to resolve plaintiff's discrimination claims.

25. On or about April 12, 2001, plaintiff while on medical leave and known by defendants to be in a fragile state of mind received a letter from UST informing her that her employment had been terminated effective April 13, 2001.

26. The reasons given by UST for plaintiff's sudden termination were specifically, "performance failures" and "careless errors" in missing purchase orders as "discovered" by Uliasz. These reasons are clearly pretextual, as demonstrated by a positive review and raise plaintiff received just prior to her counsel's first letter complaining of harassment, and inflicted distress on plaintiff.

27. Plaintiff's termination and unfavorable treatment by her superiors were not based on plaintiff's work performance, but rather were consistent with her supervisor's sexist views and harassing conduct and the direct result of plaintiff's final complaints regarding such harassment and discrimination.

### FIRST COUNT
### (29 U.S.C. §2000, Title VII – Discrimination)

28. Plaintiff hereby repeats and realleges paragraphs 1 to 27 as if more fully set forth herein.

29. Defendant UST is an "employer" as defined by 42 U.S.C. §2000e(b).

30. Defendant UST at all times relevant hereto has employed more than 15 employees.

31. Defendant UST's conduct, by and through its agents, in treating plaintiff in the manner unequal to other employees, discriminatorily denied plaintiff equal treatment on the basis of sex in violation of Title VII, as amended by the Civil Rights Act of 1991.

32. Defendant UST in failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite defendant's knowledge of the conduct, discriminatorily denied plaintiff equal treatment on the basis of sex in violation of Title VII.

33. As a result of defendant Uliasz's behavior, defendant UST subjected plaintiff to illegal discrimination. Moreover, defendant UST, through defendant Uliasz's behavior, unreasonably interfered with plaintiff's work performance, and plaintiff's complaints of discrimination were used by defendant UST as a basis for adverse employment decisions affecting plaintiff.

34. As a result of defendant UST's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

### SECOND COUNT
*(Connecticut General Statutes §46a-60(a)(1) – Unlawful discrimination)*

35. Plaintiff hereby repeats and realleges paragraphs 1 to 27 as if more fully set forth herein.

36. Plaintiff was at all times relevant hereto an "employee" as that term is defined in Connecticut General Statutes §46a-51(9).

37. Defendant UST is an "employer" as that term is defined in Connecticut General Statutes §46a-51(10).

38. At all relevant times hereto, defendant UST employed more than three persons.

39. Defendant UST's conduct, by and through its agents, in treating plaintiff in the manner unequal to other employees, discriminatorily denied plaintiff equal treatment on the basis of sex in violation of C.G.S. §46a-60(a)(1).

40. Defendant UST in failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite defendant UST's knowledge of the conduct, discriminatorily denied plaintiff equal treatment on the basis of sex in violation of C.G.S. §46a-60(a)(1).

41. As a result of defendant Uiasz's behavior, defendant UST unreasonably interfered with plaintiff's work performance, and plaintiff's complaints of discrimination were used by defendant UST as a basis for adverse employment decisions affecting plaintiff.

42. As a result of defendant UST's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

### THIRD COUNT
### (42 U.S.C. §2000e-3 (Title VII) – Retaliation)

43. Plaintiff hereby repeats and realleges paragraphs 1 to 34 as if more fully set forth herein.

44. Plaintiff repeatedly complained to defendant Uliasz, defendant UST's Purchasing Manager and the direct supervisor of plaintiff, about the manner in which she was being treated. Plaintiff also complained to defendant Uliasz's supervisor. Plaintiff specifically indicated that she believed she was being discriminated against and harassed as a result of her sex. Plaintiff's counsel also advised defendant UST of the discrimination. Plaintiff's complaints were ignored.

45. As a result of plaintiff's complaints, defendant UST has retaliated against her by, *inter alia*, (a) deliberately undermining plaintiff's work effort and creating false performance issues and (b) terminating her employment.

46. The actions of defendant UST were taken in retaliation for plaintiff's effort to protect her rights in violation of 42 U.S.C. §2000e-3, Title VII.

47. As a result of defendant UST's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## FOURTH COUNT
*(Connecticut General Statutes §46a-60(4) – Retaliation)*

48. Plaintiff hereby repeats and realleges paragraphs 1 to 27, 35 to 42 as if more fully set forth herein.

49. The actions of defendant UST were taken in retaliation for plaintiff's effort to protect her rights in violation of C.G.S. §46a-60(4).

50. As a result of defendant UST's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## FIFTH COUNT
*(Connecticut General Statutes §46a-60(5) – Aiding and Abetting)*

51. Plaintiff hereby repeats and realleges paragraphs 1 to 27, 35 to 42 as if more fully set forth herein.

52. The actions of defendant Uliasz were taken against plaintiff in an attempt to aid the foregoing discrimination practices in violation of C.G.S. §46a-60(a)(5).

53. As a result of defendant Uliasz's behavior, defendants unreasonably interfered with plaintiff's work performance, and plaintiff's complaints of sexual harassment were used by defendant UST as a basis for adverse employment decisions affecting plaintiff.

54. As a result of defendants conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## SIXTH COUNT
### (Negligent Infliction of Emotional Distress)

55. Plaintiff hereby repeats and realleges paragraphs 1 through 27 as if more fully set forth herein.

56. Defendants knew, or in the exercise of reasonable care should have known, that by treating plaintiff during the termination process as alleged herein, defendants' conduct toward plaintiff would cause her to suffer emotional distress and that the distress might result in illness or bodily harm.

57. As a result of defendants' failure to exercise reasonable care, plaintiff suffered and continues to suffer emotional distress.

## SEVENTH COUNT
### (Negligent Misrepresentation)

58. Plaintiff hereby repeats and realleges paragraphs 1 to 27 as if more fully set forth herein.

59. The representations and assurances set forth in paragraph 23 were false, were made in the course of business, and were made by defendant UST without exercise of reasonable care and competence in obtaining or communicating the information contained therein.

60. Plaintiff relied on these false representations in the conduct of her activities and in making her decisions regarding employment, specifically in her decision to take a leave of absence and was damaged thereby.

## *EIGHTH COUNT*
*(29 U.S.C. §2615(a)(1), FMLA – Interference With Rights)*

61. Plaintiff hereby repeats and realleges paragraphs 1 through 27 as if more fully set forth herein.

62. Plaintiff is an "eligible employee" as defined by 29 U.S.C. §2611(2).

63. Plaintiff had worked for more than 1,250 hours in the 12 months preceding her request for medical leave.

64. Defendant UST is an "employer" as defined by 29 U.S.C. §2611(4).

65. Defendant UST, at all times relevant hereto, has employed more than 50 employees.

66. Plaintiff's leave in March and April 2001 constitute protected leave under the FMLA, 29 U.S.C. §2615(a)(1), *et seq.*

67. Defendant UST's conduct, by and through its agents, interfered with and restrained the exercise of plaintiff's rights provided by the FMLA, 29 U.S.C. §2615(a)(1).

68. Defendant UST, in terminating, failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite defendant's knowledge of the conduct, constitutes negligent and/or willful interference with, and restraint upon, plaintiff's exercise of her rights provided by the FMLA, 29 U.S.C. §2615(a)(1).

69. As a result of defendant UST's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

11

**WHEREFORE**, the plaintiff demands:

1. Statutory damages for lost wages, benefits, and other compensation, plus interest at the statutory rate, pursuant to 29 U.S.C. §2617(a)(1)(A)(i), (ii);

2. Liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

3. Equitable relief in the form of reinstatement or front pay, as considered appropriate by the Court, pursuant to 29 U.S.C.A. §2617(a)(1)(B);

4. Attorneys' fees, expert witness fees, and costs of this action, pursuant to 29 U.S.C. §2617(a)(3);

5. Compensatory and consequential damages, including but not limited to lost wages, bonuses, and the value of all other employment benefits in an amount to be determined by the trier of fact, with interest from the date when said sums were due;

6. Common law punitive damages;

7. Front pay and/or other equitable relief including reinstatement;

8. Attorney's fees, prejudgment interest and costs; and

9. Any such additional and further relief which this Court may deem just and proper.

By _____
Scott R. Lucas (ct00517)
Michel Bayonne (CT24628)
*Attorneys for Lynn B. Kanios*
Martin Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mbayonne@mlc-law.com

## CERTIFICATE OF SERVICE

This is to certify that on this 14th day of January 2004, the foregoing was mailed, first class, postage prepaid, to:

Steven J. Younes, Esq.
Mary A. Gambardella, Esq.
Epstein, Becker & Green, P.C.
One Landmark Square
Stamford, Connecticut 06901-2681
Phone: (203) 348-3737

Scott R. Lucas