## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNN B. KANIOS | : | Civil Action No. 303CV369 (DJS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| UST INC. and MARK ULIASZ, | : | |
| | : | |
| Defendants. | : | August 19, 2004 |

### DEFENDANTS' REPLY MEMORANDUM

Defendants, UST Inc. ("UST") and Mark Uliasz, hereby respectfully submit their Reply to Plaintiff's Memorandum of Law in Opposition ("Opposition") to their Motion for Summary Judgment. As a threshold matter, Defendants must emphasize that Plaintiff's Opposition is riddled with mischaracterizations of the record and in many instances complete distortions of fact, too numerous to address in any great length within the confines of this Reply. However, we respectfully urge this Court to take note of this in its review of the Opposition and the underlying record.

### I.   PLAINTIFF RELIES ON MISREPRESENTATIONS OF THE RECORD

In attempting to salvage her Title VII and CFEPA claims of harassment, Kanios takes great liberties with the record,[1] often contradicting her own deposition testimony. Defendants are reluctant to individually address herein each of the numerous misrepresentations of the record made by Plaintiff, as they maintain it is Plaintiff's own testimony, coupled with her inability to dispute, *with evidence*, material arguments presented by Defendants, which reveal the propriety of summary judgment in this matter. In other words, Defendants are confident ample record references were

---

[1] She also takes great liberties with her rendition of judicial precedent. Indeed, she begins her Opposition with inaccurate descriptions of caselaw. For example, contrary to her suggestion, the Second Circuit has not changed its stance on granting summary judgment in employment cases. Notably, the cases she cites pre-date a number of more recent decisions cited by Defendants in their moving papers where the Second Circuit consistently held summary judgment to be appropriate in discrimination cases, despite that intent may be at issue. In fact, summary judgment was actually granted in a case cited by Plaintiff herself in support of this proposition, Zarzycki v. United Technologies Corp., 30 F. Supp.2d 283 (D.Conn. 1998).

presented in their initial moving papers for this Court to adequately ascertain Plaintiff's factual and legal allegations, absent the benefit of her attorney's "creative retelling" of those allegations.

Notwithstanding this reluctance, the most egregious of Plaintiff's mischaracterizations bear further discussion herein; that is, those misrepresentations covering the investigative process--how it began and how it progressed.  While Plaintiff incredibly begins by claiming a total lack of investigation, she soon thereafter concedes that investigative interviews were conducted, though she perceived them as inadequate to address her claims.  Nevertheless, contrary to any suggestion now, Plaintiff has <u>always</u> conceded an <u>investigation was conducted</u>.  (Kanios Dep. pp. 121-127, 130-133, 135-138, 141-145, 148-149, 151; Ex. K, Amended Complaint ¶ 17-21; Ex. W)[2]  She also has consistently admitted that it was Ms. Walsh who initiated the process as a result of an <u>informal</u> conversation with her.  (Kanios Dep. pp. 116, 145-146, 170).  Yet now, by stating that Ms. Walsh "complained…realizing the gravity of the harassment befalling" her, Kanios misleads the Court by improperly suggesting that Ms. Walsh may have even witnessed some egregious conduct and lodged a formal complaint on her behalf.  (Opposition at p. 3)  She further attempts to confuse the record with respect to how the process evolved from that point; however, it is undisputed that Viesta requested that Plaintiff meet with her after learning of Plaintiff's discussion with Mr. Rentz, Ms. Walsh's superior.  (Kanios Dep. pp. 116, 121-122, 145-146; Viesta Dep. pp. 62-64).  The representation that nothing was done until some subsequent conversation between Viesta and Rentz is pure fabrication.  (Kanios Dep. pp. 121-122; Viesta Dep. pp. 62-65)

After misrepresenting how the investigation process was triggered, Plaintiff then blatantly distorts the testimony of Nella Viesta concerning the subsequent steps taken.  Indeed, the record reveals that Viesta consistently maintained she investigated Plaintiff's complaints, which she perceived to be solely about managerial style and comments regarding eating habits.  (Viesta Dep.

---

[2] Please note that excerpts from deposition transcripts which were not a part of the exhibits to Defendant's initial Memorandum of Law are attached hereto as Exhibit 1

pp. 37-44, 55-56; 62-65; 67-68, 75-80, 84-85, 88-90, 92-94, 97-102, 110, 113, 115) Viesta

concluded that neither "legal harassment," nor harassment as defined by the Company's Code of

Conduct, was involved; she nevertheless seriously investigated Plaintiff's allegations.[3] Plaintiff

astonishingly attempts to convince this Court that Viesta testified she never investigated Plaintiff's

complaint, despite the clear testimony regarding the manner in which Viesta classified the internal

complaint and the ensuing investigation. (Opposition at p. 4)

Putting aside Plaintiff's complete and utter disregard for accuracy in the

representation of the record, it is unequivocally clear that even if her current rendition of statements

purportedly made to Viesta is taken as true, she still cannot maintain either a gender-based

discrimination or hostile environment claim. Such was the position taken by Defendants in their

initial moving papers, and such is their position now. Yet, instead of grappling with the inadequacies

of her allegations and the strength of Defendants' application of the prevailing legal standards,

Plaintiff hopes to create questions of fact where none exist with a "smoke and mirrors" portrayal of

the investigation--how personnel viewed her allegations then and their deposition testimony to that

affect--as if such viewpoints, even if incorrect, change the ultimate, inescapable conclusion that her

allegations cannot satisfy her burden of proof in the first instance. In order words, irrespective of (1)

whether UST personnel disagreed at deposition with what Kanios claims she told them; (2) whether

UST personnel should have categorized her claims as "legal" harassment or harassment within the

scope of UST's Code of Corporate Conduct; and (3) irrespective of whether her allegations about

Uliasz's conduct are true; Kanios cannot, for those reasons already explored at length by Defendants

in their Memorandum of Law in Support of Their Motion for Summary Judgment ("MOL"),

maintain her gender-based, hostile environment claim. (See MOL at pp. 3-14, 16-25) Indeed, a plain

reading of Plaintiff's Opposition confirms that the crux of Uliasz's alleged conduct undisputedly

---

[3] By way of further distortion, Plaintiff implies the determination of "harassment" under the internal Company Code is equivalent to Title VII or CFEPA based actionable harassment.

involved comments about size, appearance and intelligence, spattered with a handful of <u>potentially</u>,

(*i.e.*, <u>not</u> blatantly) gender-related statements (See MOL at pp. 4-5), and that an investigation <u>was</u>

promptly conducted.  (See e.g., Viesta and Kanios deposition pages cited above and Ex. P, X, DD)

Furthermore, while not challenging, or even addressing, any of the precedent offered

by Defendants, Plaintiff cites to 2004 rulings which she claims establish the sufficiency of her

allegations.  For example, Plaintiff cites <u>Feingold v. State of New York</u>, 366 F.3d 138 (2d Cir. 2004),

claiming the evidence presented to that court consisted of "daily harassing comments", as if similar

to those allegations presented here.  In reality, the "comments" in <u>Feingold</u> were blatantly anti-

semitic, hardly of the same nature alleged herein.  Likewise, she offers the rulings in <u>Pascal v.</u>

<u>Storage Technology Corp.</u>, 152 F.Supp. 191 (D. Conn. 2001), <u>Newton v. Shell Oil Co.</u>, 52 F.Supp.2d

366 (D. Conn. 1999) and <u>Badlam v.Reynolds Metals Company</u>, 46 F.Supp.2d 187 (N.D.N.Y. 1999),

implying they too are on point; to the contrary, the conduct in those cases consisted of sexually

explicit language and discussion; overt sexual gestures; calling plaintiff names such as "wench",

"cunt", "slut", "whore", "dumb cunt"; calling women "fucking bitches"; sexual insults, etc.  In

<u>Badlam</u>, in particular, the verbal comments and gestures were accompanied by a deliberate touching

of plaintiff's buttocks, and evidence that the conduct was directed solely at females.  Based on those

distinguishable facts, it is conceivable that summary judgment would be denied.  However,

Plaintiff's allegations are of an altogether different nature and hardly rise to that level.  Thus,

Plaintiff's reliance on the decisions cited is wholly misplaced.  It is obvious the conduct presented to

those courts was far more severe, pervasive and directed at gender than any of the conduct proffered

by Plaintiff.

Plaintiff also cites to <u>Gregory v. Daly</u>, 243 F.3d 687 (2d Cir. 2001) for the

proposition that "courts have not hesitated to deny a dispositive motion where, as here, the same

circumstances suggesting a hostile environment claim also give rise to a claim of sex discrimination."

Plaintiff describes <u>Gregory</u> as involving a pattern of conduct that began with insults, but which

thereafter took the form of concrete interference with job functions, culminating in termination.  In such a way, however, Plaintiff fails to note that the Gregory court found the "sex-based character of much of Daly's behavior permits the inference that the remainder of his harassing conduct was also due to Gregory's sex", including the supervisor's concrete acts to undermine her authority.  Id. at 695.  Again, in stark contrast to the conduct involved in this case, Gregory's conduct consisted of sexually demeaning statements; vulgar and sexually explicit comments; statements about sexual violence and the vulnerability of women to such violence; and eventually unwelcome conduct of a sexual nature.  Again, wholly distinguishable facts which hardly mirror the facts alleged by Plaintiff herein.

Plaintiff's purported reliance on Greenway v. The Buffalo Hilton Hotel, 143 F.3d 47 (2d Cir. 1998) a disability discrimination case, is similarly misplaced.  Contrary to Plaintiff's description of the holding of this case, the Greenway court did not hold that "evidence of defendant employer's inconsistent application of its disciplinary policy was sufficient for the jury to have decided properly that the employer's stated reason for discharge was simply a pretext for discrimination."  (Opposition at pp. 21)  To the contrary, the lower court jury never reached the pretext question, but decided the employer had not met its burden of articulating a nondiscriminatory reason for termination of plaintiff's employment, and proceeded directly to the issue of damages. Plaintiff's description of the facts is similarly disingenuous; the employer's articulated reason for discharge was that its policy required Greenway's dismissal after receiving four disciplinary warnings, but Greenway presented evidence that no less than four other employees were either not disciplined at all after even more serious conduct, or received many more warnings but were not terminated.  These facts are patently distinguishable from those at hand.  Moreover, and critically important, Plaintiff must satisfy her *initial* burden before an analysis of the adequacy of the Defendants' articulated reason for her termination is ever reached.

In short, the judicial precedent offered by Plaintiff has no relevance whatsoever to the allegations of the ilk undisputedly presented herein, even if Plaintiff's allegations are taken as true. Accordingly, her Title VII and CFEPA claims must be dismissed as a matter of law.

## II.   DEFENDANTS ADDRESSED A DISCRIMINATION CLAIM

Plaintiff's Opposition also infers that Defendants failed to recognize, and therefore address, her claim of gender discrimination as opposed to her claim of gender-based, hostile environment harassment.  To the contrary, Defendants have more than adequately established the following undisputed facts in their initial MOL:

a.      Plaintiff herself failed to attribute her gender to the subsequent termination decision.  In response to questioning by her own attorney, she claimed Defendants were motivated by the fact she had complained in terminating her employment—she never mentioned her gender as a factor playing a role therein; (Kanios Dep. p. 254)

b.      Plaintiff proffered no admissible evidence whatsoever to establish that any of Uliasz's purported conduct was based on her gender, as opposed to either a personal dislike, bad manners or to a poor managerial style about which males had also complained.  (See MOL at p. 16-17; e.g., Kanios Dep. pp. 63-64, 84-85, 93-95, 102-103, 113-14, 153-60, 168, 258; Maguire Dep. pp. 55, 58, 60-61);

c.      Plaintiff failed to proffer any evidence to contradict the testimony of defense witnesses with respect to how males were treated by Uliasz, or even how other females were treated. (Kanios Dep. pp. 84-85, 154-155, 157-158, 258)  Indeed, Plaintiff admitted to a complete lack of knowledge of disparate treatment; and

d.      Plaintiff could not dispute that Uliasz gave her positive performance reviews, raises, bonuses or that he promoted other females. (Kanios Dep. pp. 88, 93-95; 112-114, 157; Ex. U; Maguire Dep. p. 7)

In short, Defendants have more than sufficiently addressed, and negated, any perceived questions of material fact with respect to a claim of gender discrimination. (See MOL at pp. 15-25)

### III.    PLAINTIFF'S RETALIATION CLAIM RELIES ON PURE SPECULATION

In addressing Defendants' arguments with respect to the retaliation claim, Plaintiff actually underscores the absence of genuine issues of material fact by offering only conjecture. By way of example, Plaintiff states that the decision-makers, Howard and Uliasz, "knew" of the content of the attorney's letters to Mr. Kohlberger. (Opposition at pp. 24) This speculation is conspicuously and not surprisingly unaccompanied by references to the record, or otherwise by any <u>evidence</u> which would contradict the testimony of the witnesses who actually received those letters, as well as the testimony of Uliasz and Howard themselves.[4] Furthermore, and critically important, Plaintiff does not, because she cannot, offer one scintilla of evidence to dispute the testimony of Priscilla Maguire, a female and <u>not</u> a decision-maker, regarding the actual events surrounding the termination decision. (Maguire Dep. pp. 20-21, 27-29, 44-45, 49-52, 61-62, Ex. O)

Plaintiff relies heavily on the case of <u>Cifra v. Gen. Electric Co.</u>, 252 F.3d 205 (2d. Cir. 2001) to support her allegation that the mere act of her attorney forwarding letters provides the sufficient, causal connection. However, despite her efforts to make it applicable, it is clear that the <u>Cifra</u> case is patently distinguishable on its facts. Specifically, in <u>Cifra</u>, the supervisor responsible for the termination decision was undisputedly aware of not just the fact of the letter to human resources, but also of the content in which a discrimination claim was raised. That supervisor had attended a meeting with the human resources representative to discuss the letter with plaintiff, and to convince her she did not need an attorney. Additionally, there is no indication that the supervisor

---

[4] Defendants note Plaintiff attempts to create some sinister situation in Richard Kohlberger's reliance on Viesta to conduct an investigation, as opposed to conducting one himself. Query whether a Vice President should be implicated in discrimination simply by virtue of his reliance on the appropriate subordinate to do her job.

denied knowledge of the content of that letter.[5]  Finally, there was evidence that the supervisor <u>told</u> a

state human rights investigator that the plaintiff's refusal to meet with him without counsel present

"accelerated the termination."    <u>Id</u>. at 217.   Plaintiff ignores these distinguishing facts and then

misstates the ruling on which she relies; contrary to her representation to this Court, nowhere in <u>Cifra</u>

does that court even suggest that it "recognized that [solely by virtue of sending] the letter, plaintiff

had  made  defendant  *as well as the harasser*  aware  of  her  complaints."    (Emphasis added)

(Opposition at pp. 26)

Focusing on <u>Cifra</u>, yet again, Plaintiff emphasizes solely the purported temporal

proximity between the timing of her internal complaint and the termination decision.  However, as

Defendants have established in their initial MOL, the claim of temporal proximity only assists

Plaintiff during the prima facie stage of her burden; she <u>cannot</u> satisfy her burden at the pretext stage

with this allegation alone.  Notably, Plaintiff lumps all the purported "evidence" of retaliation, with

the claim of temporal proximity, as if her burdens were one and the same at all stages.  As a result,

she fails to sustain her burden of proof that Defendants' reason for her termination was pretextual,

and consequently, her retaliation claim should be dismissed.

## IV.    <u>PLAINTIFF'S NEGLIGENCE CLAIMS FAIL</u>

### A.    <u>Claim of Negligent Infliction of Emotional Distress</u>

Plaintiff's Opposition ignores the more recent ruling of this Court in <u>Adams v.</u>

<u>Hartford Courant</u>, 2004 WL 1091728, No. Civ. 3-03CV-04 77 (JCH) (D. Conn. May 14, 2004),

where this Court confirmed that it is initially a question for the court to determine whether the

defendant's conduct is sufficient to satisfy the requirement that it be "extremely outrageous"

(citations omitted).  Instead, Plaintiff cites to the decision in <u>Edwards v. Community Enterprises,</u>

<u>Inc.</u>, 251 F.Supp.2d 1089 (D. Conn. 2003) to support her argument that UST's conduct will suffice to

---

[5] Interesting to note, the dismissal of <u>Cifra's</u> gender discrimination claim was <u>upheld</u>.  Cifra claimed her supervisor treated her "more harshly" because she was female. <u>Id</u>. at 216.

maintain this cause of action.  However, contrary to Plaintiff's innocuous portrayal of the pertinent

facts of Edwards, the defendant in that case, knowing plaintiff was recovering from pneumonia, gave

her 48 hours notice to vacate her home and threatened to have the police evict her.  The housing was

provided incident to the plaintiff's services to defendant, and thus, this conduct was deemed incident

to the company's termination process.[6]   Moreover, Plaintiff's description of the holding in Copeland

v. Home and Community Health Services, Inc., 285 F.Supp.2d 144 (D. Conn. 2003); is inaccurate;

contrary to her remarks here, the Copeland court did not hold that "the defendant employer's

pressuring of plaintiff amounted to unreasonable conduct".  Rather, the court held that the alleged

behavior could be deemed unreasonable by a jury, where that defendant terminated plaintiff while on

medical leave specifically for her failure to return to work.  No such reason for termination was given

by UST.[7]

    As these cases underscore, the conduct which gives rise to Plaintiff's claim, even if

true, is not conduct which "transgress[es] the bounds of socially intolerable behavior". Perodeau v.

City of Hartford, 259 Conn. 729, 750 (2002); Parsons v. United Technologies Corp., 243 Conn. 66,

88-89 (1997)(liability is imposed only where the conduct is "sufficiently wrongful" and "particularly

egregious"—mere inconsiderate or precipitous conduct may not suffice; citations omitted).  Indeed,

in Parsons, the plaintiff was terminated and removed from the employer premises under security

escort.

    Most recently, this Court in Walsh v. Walgreen Eastern Co., Inc., 2004 WL 722226,

No. 3:03 CV 1609 (WWE) (D. Conn. Mar. 25, 2004) referred to speculation by the Second Circuit as

to whether the Connecticut Supreme Court would continue, for reasons described therein, to require

---

[6] Edwards also involved a claim of retaliation under the FMLA.  However, the plaintiff there had not already exhausted her leave entitlement when her employment was terminated, and the defendant's challenge was focused on plaintiff's status as an employee versus independent contractor.
[7] Likewise, the facts presented to the courts in Chen v. Pitney Bowes Corp., 195 F.Supp.2d 368 (D. Conn. 2002), Cameron v. Saint Francis Hospital and Medical Center, 56 F.Supp.2d 235 (D. Conn. 1999), Nance v. M.D. Health Plan, 47 F.Supp.2d 276 (D. Conn. 1999) and Kuselias v. Southern New England Telephone Co., 1996 WL 646759 (Conn. Super. 1996) clearly involved conduct connected with the termination process, and conduct much more egregious than any conduct complained of in this case.

ST:29252v1                              - 9 -

going forward that the termination process itself be implicated to sustain this cause of action. Nevertheless, the Walsh court reiterated longstanding principles that: (a) the employer's conduct must be unreasonable in the manner in which the employer carries out the employment action; and (b) the conduct must be [objectively] humiliating, extreme or outrageous.  "Because emotional distress in the workplace is not uncommon, courts have viewed the application of the negligent infliction of emotional distress claims with some alarm, and the Connecticut Supreme Court has stated that 'courts should not lightly intervene to impair the exercise of management discretion or to foment unwarranted litigation'.  To that end, Connecticut courts have held that to be unreasonable, the employer's conduct must be humiliating, extreme, or outrageous." Id. at *3 (quoting Miner v. Town of Cheshire, 126 F.Supp.2d 184, 197 (D. Conn. 2002)).[8]  The Miner court elaborated that a failure to hire based on racial bias would be not be sufficiently humiliating, extreme or outrageous; query if race discrimination is insufficient, how Plaintiff's allegations as to conduct while she was out on leave could pass muster here.  Miner, 126 F.Supp.2d at 198.  Hernandez v. City of Hartford, 30 F.Supp.2d 268 (D. Conn. 1998) is particularly instructive in this regard.  In Hernandez, the court held there was no supportable claim of negligent infliction where defendant intentionally made inappropriate comments about female employee's race, marital status and gender, because such conduct was not deemed sufficiently actionable[9].  Id. at 273 (citations omitted).  Notably, Plaintiff concedes the high standard established by these courts is the standard she must meet.  Consequently, Defendants reiterate their request that this count be dismissed.

---

[8] Specifically, in Miner, this court further noted: "this tort must nevertheless be limited so as not to open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law". (internal quotation marks omitted, quoting Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345 (1978)). See also, Johnson v. Chesebrough-Ponds, Inc., 104 F.3d 355 (2d Cir. 1996)(Unpublished--court rejected suggestion of another court that conduct which is embarrassing or inconsiderate is actionable); Brown v. Nationscredit Commercial Corp., 2000 WL 306947 at *4, NO:3:99CV592 EBB  (D. Conn. Feb. 8, 2000)(extreme and outrageous behavior is the type required).
[9] This decision followed the Parsons decision, but pre-dated Perodeau; nevertheless, the court was addressing the issue of whether the conduct itself would pass muster as being sufficiently extreme.

**B.**    **Claim of Negligent Misrepresentation**

Plaintiff attempts to now assert that the actionable misrepresentation on which she relied was Viesta's verbal statement that she had "three and one-half weeks left of FMLA" leave, followed by written documents purportedly confirming that leave entitlement. However, here again, Plaintiff can only proffer misrepresentations of the record. Specifically, the record reflects that Plaintiff does not even assert Viesta, during the verbal conversation, distinguished between state and federal FMLA leave entitlement. (Kanios Dep. pp. 302-315) Moreover, and critically important, the subsequent, written "representation", that advisement of March 22, 2001, that was sent again to Kanios on April 6, 2001, makes unequivocally clear in explanation and dates of past leave provided, that Plaintiff had no federal FMLA leave remaining, and from March 20, 2001, only 3-1/2 weeks remaining under Connecticut state law. (Ex. Z) Plaintiff confirmed in her deposition her understanding of the calculation of federal leave entitlement under UST's policies, and has only asserted a claim under federal law. (Ex. K, Amended Complaint; Kanios Dep. pp. 302-315) Finally, and most importantly, Plaintiff, contrary to the representations in her Opposition, stated under oath during her deposition that she was not able to have returned from leave even after three and one-half weeks. (Kanios Dep. 307) Simply stated, Plaintiff's misrepresentations of her clear testimony should not be altered now to rescue her deficient misrepresentation claim. Jones v. N.Y. Health and Hospital Corp., 2004 U.S. App. LEXIS 11630, No-03-7820 (2d Cir. June 14, 2004)(plaintiff's affidavit which contradicted own prior deposition testimony should be disregarded on summary judgment).

**V.**    **THE FMLA ARGUMENTS RELY ON INAPPLICABLE PRECEDENT**

Plaintiff cites to an endless string of judicial decisions which have absolutely no bearing whatsoever on Defendants' argument. (Opposition at pp. 36-38) Specifically, the cases cited by Plaintiff stand uniformly for the proposition that an employee is entitled to rely on an employer's characterization of her leave as FMLA qualified leave. However, UST never asserted Plaintiff was

not on FMLA leave; what Defendants argued is that the evidence is undisputed that Plaintiff had

already exhausted the FMLA entitlement during her leave, while still by her own admission unable to

return to work and prior to the decision to terminate her employment. (Defendant's MOL at pages

36-39)[10]  In short, Plaintiff does nothing in her opposition papers to even address Defendants' actual

arguments, not to mention dispute them.  Indeed, one of the cases cited, Mion v. Aftermarket Tool

and Equip. Group, 990 F.Supp. 535 (W.D. Mich. 1997) involved an employer's motion for summary

judgment which was granted.[11]

Likewise, Plaintiff misses the mark in the balance of her argument.  Contrary to her

assertions, Defendants do not focus on whether she actually suffered from a serious illness pursuant

to the FLMA; Defendants contend that her illness was not *certified* as required by the FMLA beyond

an initial two week period.  (See MOL at p. 38)  Indeed, it is noteworthy that Plaintiff failed to

depose any witnesses who could verify a serious illness at the point of termination, or even after her

employment had been terminated.  The reason for this failure is also undisputed–Plaintiff never

sought continued treatment for this so-called "serious illness" once she was terminated from her

employment.  Yet, at the same time, Plaintiff herself claims a physical inability to have returned to

work as of the expiration of that FMLA leave period. (Kanios Dep. p. 307) Thus, Plaintiff's estoppel

argument is patently defective, and consequently, her FMLA claim should be summarily dismissed.[12]

## CONCLUSION

For the foregoing reasons, and for those reasons already set forth in Defendants'

initial moving papers, Defendants respectfully request that their Motion For Summary Judgment be

granted in its entirety.

---

[10] Again, the standard FMLA-leave notice Plaintiff admitted receiving from UST confirmed, without any doubt, her
federal FMLA entitlement had already been exhausted by the start of her leave on March 21, 2001.

[11] The court found that the employer's failure to notify Mion that it would count the first 12 of the 16 weeks of leave
offered her toward her FMLA entitlement, and that she would forfeit her right to reinstatement by taking all 16
weeks, was not actionable as it did not ultimately interfere with any of Mion's rights under the FMLA.

[12] Defendants contend the balance of the arguments addressed by Plaintiff have already been adequately explored in
their initial MOL.

**EPSTEIN BECKER & GREEN, P.C.**
Attorneys for Defendants


By:_____

    Mary A. Gambardella, Esq.
    Federal Bar No. ct05386
    One Landmark Square, Suite 1800
    Stamford, CT  06901-2681
    (203) 348-3737

       and

    Steven J. Younes
    Federal Bar No. ct12408
    One Landmark Square, Suite 1800
    Stamford, CT  06901-2601
    (203) 348-3737

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing *of Defendants' Reply*

*Memorandum* was served, regular mail, postage prepaid, this 19th day of August 2004 to:

> Scott Lucas, Esq.
> Martin, Lucas & Chioffi, LLP
> 177 Broad Street
> Stamford, CT  06901

_____
Mary A. Gambardella