UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LYNN B. KANIOS,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :    No. 3:03CV369(DJS)
                                   :
UST, INC. and MARK ULIASZ,         :
                                   :
        Defendants.                :

MEMORANDUM OF DECISION

On January 14, 2004, plaintiff Lynn Kanios filed this action
alleging that defendant UST, Inc. ("UST"), her employer,
terminated her employment because of her gender and in
retaliation for her objecting to the discriminatory conduct of
her former supervisor, defendant Mark Uliasz ("Uliasz"), in
violation of Title VII of the Civil Rights Act, 42 U.S.C. §§
2000e et seq., and the Connecticut Fair Employment Practices Act
("CFEPA"), Conn. Gen. Stat. §§ 46a-60(a)(1) & (4).  Kanios also
alleges state law claims of negligent infliction of emotional
distress, negligent misrepresentation, and a claim against Uliasz
for aiding and abetting UST's discriminatory conduct in violation
of Section 46a-60(5) of the Connecticut General Statutes.  Kanios
further alleges that UST violated the Family Medical Leave Act
("FMLA"), 29 U.S.C. § 2615(a)(1), by misrepresenting the amount
of leave to which she was entitled and by terminating her
employment while on FMLA leave.  On July 12, 2004, defendants

filed a motion for summary judgment (dkt. # 41) on all counts of Kanios's complaint. For the reasons set forth herein, defendants' motion is **DENIED in part and GRANTED in part**.

## I. FACTS

UST is a manufacturer of smokeless tobacco products with headquarters located in Greenwich, Connecticut.  Kanios began working at UST on March 6, 1995 as a Support Staff Secretary in the Human Resources Department and, after a series of promotions, became an Associate Buyer in the purchasing department in July of 1997.

In her position as Associate Buyer, Kanios was responsible for assisting Senior Buyers and Managers by placing purchase orders with suppliers and assisting in maintaining sufficient inventory at the manufacturing facilities.  As an Associate Buyer Kanios reported to Uliasz, a purchasing Manager at UST, who was supervised by Tim Howard, the department Director.  Kanios also worked with and was supervised by Priscilla Maguire, a Buyer.

Kanios claims that from July of 1997 until April of 2001 Uliasz harassed her because of her gender.  She specifically alleges that Uliasz said and did the following: called Kanios a "fat bitch," (dkt. # 46 Ex. 6 at 43:21-44:7); told her that "it was a good thing [she] was already married, because nobody would want [her] the way [she] was looking," (dkt. # 46 Ex. 1 at 247:5-

-2-

7); said that Kanios was emotional because she was a woman, (see dkt. # 46 Ex. 1 at 150:8-9); told her that "women should be barefoot and pregnant," (dkt. # 46 Ex. 1 at 97:13-14); said that Kanios "was not nice looking enough or – nice looking enough or sexy enough to be back out on the market," (dkt. # 46 Ex. 1 at 247:9-11); told Kanios she could not "fit through the door," despite knowledge of her two recent pregnancies, and pushed Kanios aside and said "get out of my way" while walking past her at work, (dkt. # 48 Ex. T).  Kanios also alleges that "[e]very morning [Uliasz] would come in and make a comment about what I was eating, how heavy I was.  When you're done eating, make sure you wipe your chin off.  He would ask me if I wanted him to go get Hefty bags.  He would ask me when I was strapping the feed bag on."  (Dkt. # 46 Ex. 1 at 102:8-13).

Kanios reported her concerns about Uliasz's behavior to UST in January of 2001.  Christine Walsh, who worked with Kanios, decided to report a conversation she had with Kanios to her supervisor, Robert Rentz, Director of Customer Development, who was also a compliance representative responsible for addressing employee concerns.  Rentz met with Kanios, who told him about the behavior she believed was harassing, including, according to Rentz, Uliasz's reference to Kanios being a "fat bitch." (Dkt. # 48 Ex. 6 at 43-45).  Rentz reported his conversation with Walsh

to UST's legal department and Nella Viesta, Director of Employee Relations.  On February 7, 2001, Kanios met with Viesta to discuss Uliasz's behavior.  On that same day, Uliasz created a positive performance review of Kanios, which he shared with his supervisor, Howard.  An increase in salary for Kanios was also authorized.  The next day Uliasz was informed of the allegations Kanios made against him.

Kanios alleges that UST did not properly investigate her complaints about Uliasz and instead began to question the quality of her work. On February 16, 2001, after a meeting with Howard and Uliasz about Kanios's claims and her job performance, Kanios spoke to Karen Thorman, the Vice President of UST's Employee Assistance Program, and Mary Ann Morelli, UST's manager of the Employee Assistance Program.  Kanios complained that she felt uncomfortable meeting with Uliasz and Howard alone.  Thorman explained that Kanios would have to meet with Uliasz without a company representative and then sent Kanios home for the day because she was upset.  On February 20, 2001, Kanios alleges that she was tricked by Howard into meeting alone with Howard and Uliasz.  After this meeting, Kanios complained to Viesta that she believed her supervisors were trying to undermine her complaints of harassment by falsely criticizing her job performance.

Shortly thereafter, Kanios contacted an attorney who wrote a

-4-

letter to Richard Kolhberger, Senior Vice President of UST, that was received on February 21, 2001.  The letter outlined examples of the allegedly discriminatory conduct and asked that a meeting be arranged with Kanios and her lawyer.  On February 27, 2001, however, Kanios met, alone, with Viesta, Howard, and Uliasz.

Kanios eventually took medical leave from UST and did not return.  On March 19, 2001, Kanios, claiming that she was upset from past and continued harassment by Uliasz, went to Viesta and Thorman, who sent her to a doctor for treatment.  On March 20, 2001, Kanios was approved for and began her medical leave.  The next day, Kanios's attorney sent a second letter to UST, which was received by Kohlberger and sent to Viesta, accusing UST of using Kanios's report of harassment as an opportunity to falsely criticize Kanios's job performance.  That same day, Viesta informed Howard of Kohlberger's letter, and Howard told Viesta that Maguire discovered problems with Kanios's work.  According to Maguire, Kanios failed to place orders for several different factories, which would have led to stoppages in production.  On April 11, 2001 Kanios received a letter of termination.

## II. DISCUSSION

Kanios brings the following claims against defendants: (1) sex discrimination in violation of Title VII (First Count) and the CFEPA (Second Count) against UST; (2) retaliation in

-5-

violation of Title VII (Third Count) and the CFEPA (Fourth Count)
against UST; (3) aiding and abetting unlawful discrimination in
violation of the CFEPA against Uliasz; (4) negligent infliction
of emotional distress against UST and Uliasz (Sixth Count); (5)
negligent misrepresentation against UST (Seventh Count); and (6)
interference with medical leave in violation of the FMLA against
UST (Eighth Count).  Defendants seek judgment as a matter of law
on all counts set forth in Kanios's complaint.

### A. STANDARD

A motion for summary judgment may be granted "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(c).  Summary judgment is appropriate if, after
discovery, the nonmoving party "has failed to make a sufficient
showing on an essential element of [its] case with respect to
which [it] has the burden of proof."  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  "The burden is on the moving party
'to demonstrate the absence of any material factual issue
genuinely in dispute.'"  American Int'l Group, Inc. v. London
Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting
Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2nd

-6-

Cir. 1975)).  A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

## B. SEX DISCRIMINATION CLAIMS

Kanios alleges that she was subject to discrimination based on her gender and was subjected to a hostile work environment. Kanios has properly pleaded both causes of action and has produced evidence demonstrating that material issues of fact remain with respect to both the hostile work environment claim and the sex discrimination claim.

### 1. HOSTILE WORK ENVIRONMENT

In order to survive a motion for summary judgment on a hostile environment claim under Title VII, a plaintiff must bring forth evidence from which a reasonable trier of fact can make two dispositive conclusions.  See Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). First, the harassment was

"sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted); see also Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  Second, a specific basis exists for imputing the conduct that created the hostile environment to the employer.  See Perry, 115 F.3d at 149.  To prevail on a hostile work environment claim, the plaintiff must, therefore, show that the workplace was permeated with discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive to alter the conditions of her employment.  See Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998); Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995).

The Supreme Court in Harris instructed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris, 510 U.S. at 23. The incidents must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Faragher, 524 U.S. at 786-788 n.1 (citations omitted). "[O]ne of

-8-

the critical inquiries in a hostile environment claim must be the environment.  Evidence of a general work atmosphere . . .– as well as evidence of specific hostility directed toward the plaintiff– is an important factor in evaluating the claim." Perry, 115 F.3d at 149 (internal quotation marks and emphasis omitted).  Simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment, see Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998), but rather that "conduct must be extreme to amount to a change in the terms and conditions of employment. . .," Faragher, 524 U.S. at 788.

Thus, harms suffered in the workplace are cognizable under Title VII, even when they are not the result of "tangible employment actions," if they arise from conduct (1) that is "objectively" severe or pervasive– that is, if it creates "an environment that a reasonable person would find hostile or abusive" (the "objective" requirement), Harris, 510 U.S. at 21, (2) that the plaintiff "subjectively perceive[s]" as hostile or abusive (the "subjective" requirement), id., and (3) that creates such an environment because of plaintiff's sex (or other characteristic protected by Title VII) (the "prohibited causal factor" requirement), see Oncale, 523 U.S. at 80 ("[H]arassing

-9-

conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.").

Kanios has demonstrated that she found Uliasz's behavior abusive, and that disputed issues of material fact remain regarding whether Uliasz's behavior was severe and pervasive enough to change the conditions and terms of Kanios's employment. At trial, Kanios may be able to show that the terms and conditions of her employment where changed as a result of Uliasz's conduct.  Kanios may show that Uliasz made comments about her appearance after her pregnancy, called her a "fat bitch," and told her that "women should be barefoot and pregnant."  Uliasz's comments are vivid, gratuitous insults referencing Kanios's pregnancy and her appearance following her pregnancy, and could reasonably be considered severe.  Further, Uliasz made these comments several times, and Kanios could prove that the harassment occurred with such frequency as to change the conditions of her employment.  A reasonable jury could find that the harassment was "of such a quality or quantity that reasonable employee would find the conditions of her employment altered for the worse."  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 70 (2d Cir. 2000).

Additionally, Kanios's offer of proof "permit[s] the inference that plaintiff was subjected to a hostile environment

because of her sex." Gregory v. Daly, 243 F.3d 687, 694 (2d Cir. 2001). Defendants make a concerted effort to narrow Kanios's account of Uliasz's conduct to gender-neutral insults. At trial, however, Kanios may show that Uliasz ridiculed the roles that a woman should play in society and included terms, like "fat bitch," which are terms specifically degrading to a woman. Uliasz's use of gender-specific slang and his references to weight gained as a result of her pregnancies could offer a jury a different perspective on other comments that may be, on their face, gender-neutral. See Gregory, 243 F.3d at 694-95 ("The relevant question therefore becomes whether, *in the given case*, the pleading suffices to support an ultimate finding that the alleged harasser acted as he did because of the plaintiff's sex."). Therefore, there are material issues of fact to be resolved by the jury with respect to the "objective" requirement and the "prohibited causal factor" elements of the hostile work environment claim.[1]

UST claims that, even if Kanios's work environment is deemed unlawfully discriminatory, it is entitled to summary judgment based on the affirmative defense announced by the Supreme Court

_____

[1] With respect to the second element of a claim of a hostile work environment, the actions of Uliasz can be imputed to UST because Uliasz was Kanios's direct supervisor. See Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807.

-11-

in _Faragher_ and _Ellerth._  An employer may rebut the presumption of vicarious liability for a hostile environment created by a supervisor when no tangible employment action is taken against an employee when: (a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. See _Ellerth_, 524 U.S. at 765; _Faragher_, 524 U.S. at 807.  "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."  _Ellerth_, 524 U.S. at 765.

UST has not established its affirmative defense as a matter of law.  First, Kanios was terminated and has produced evidence that her termination was a culmination of her supervisor's harassment as well as retaliation for her reporting of the harassment.  Second, even if UST were entitled to assert this affirmative defense, UST cannot meet its burden and satisfy the two elements necessary to prevail on the affirmative defense. See _Richardson v. New York Dep't of Corr. Serv._, 180 F.3d 426, 442-443, (2d Cir. 1999) (characterizing the two elements as being in the conjunctive).  UST has not shown that, as a matter of law, Kanios unreasonably failed to take advantage of any preventive or

-12-

corrective opportunities provided by UST to avoid harm.  Both
parties recognize that Kanios complained to a compliance
representative at the company, and followed up with complaints to
Thorman, the Vice President for UST's Employee Assistance
Program, and Viesta, Director of Employee Relations.  Therefore,
UST is not entitled to judgment as a matter of law on its
affirmative defense, and its motion for summary judgment with
respect to Kanios's hostile work environment claim is denied.

### 2. SEX DISCRIMINATION

In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802
(1973) the Supreme Court established an "allocation of the burden
of production and an order for the presentation of proof in Title
VII cases."  Under that framework, a plaintiff alleging a
violation of the anti-discrimination statutes establishes a <u>prima
facie</u> case by showing she:  (1) was a member of a protected
class; (2) was qualified for the position she held; (3) suffered
an adverse employment action; (4) in circumstances giving rise to
an inference of discrimination.  <u>See</u> <u>Schnabel v. Abrahmson</u>, 232
F.3d 83, 87 (2d Cir. 2000); <u>see also</u> <u>Texas Dept. Of Community
Affairs v. Burdine</u>, 450 U.S. 248, 253 (1985) ("Plaintiff must
prove by a preponderance of the evidence that she applied for an
available position for which she was qualified, but was rejected
under circumstances which give rise to an inference of unlawful

-13-

discrimination."). If the plaintiff establishes a <u>prima facie</u> case, the employer has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action. <u>Stern v. Trustees of Columbia University</u>, 131 F.3d 305, 312 (2d Cir. 1997). If the employer does so, the plaintiff must prove by a preponderance of the evidence that the employer's proffered explanation is unworthy of credence, and that the true reason for the employer's action was discrimination.[2] <u>See</u> <u>Id.</u>

Kanios has made a <u>prima facie</u> showing of sex discrimination. Kanios is a woman, who was qualified for her position as an Associate Buyer. Kanios suffered an adverse employment action when she was terminated. She has also established that the adverse employment action in this case occurred under circumstances giving rise to an inference of discriminatory intent.

Specifically, with regard to the circumstances giving rise to an inference of discriminatory intent, the same evidence demonstrating a hostile work environment also give rise to the inference that UST's termination of Kanios's employment was based on Kanios's gender. <u>See</u> <u>Pitre v. Western Elec. Co., Inc.</u>, 843

---

[2] Plaintiff's CFEPA claims are governed by the same standards applicable to her Title VII claims. <u>See</u> <u>Levy v. CHRO</u>, 236 Conn. 96, 107-108 (1996); <u>Miko v. CHRO</u>, 220 Conn. 192, 204 (1991).

F.2d 1262, 1270 (10th Cir. 1988) ("Evidence of harassment . . .
helps create an inference of discrimination in [the employer's]
promotion and demotion practices.").  Indeed, courts dealing with
Title VII sex discrimination cases have long recognized that
"actions or remarks made by decision makers that could be viewed
as reflecting a discriminatory animus" may "give rise to an
inference of discriminatory motive."  Chertkova v. Connecticut
General Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) (citing
Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir.
1992)).  This is no less true when those same remarks also
contribute to the creation of a hostile work environment. Sex-
based hostility to a woman's continued presence in the workplace,
or to particular roles within it, is indicia of discrimination in
both the context of the creation of a hostile work environment
and the imposition of more tangible employment sanctions, such as
termination. See Farmer Bros. Co., 31 F.3d at 898 ("Because
hostility against women underlies decisions to discharge or to
refuse to hire women because of their gender, evidence of sexual
harassment often will be relevant to claims of gender-based
employment discrimination."); see also Gregory, 243 F.3d at 697.

    Kanios has produced evidence upon which a reasonable juror
could find that sexual discrimination occurred.  Uliasz's remarks
about how "women should be barefoot and pregnant" and "women

-15-

belong in the home," along with the temporal proximity of the
harassment and the termination all support the inference of
discrimination.  Kanios has also produced evidence that a
similarly situated male employee was treated more favorably than
she was under similar circumstances.  See McGuinness v. Lincoln
Hall, 263 F.3d 49, 53 (2d Cir. 2001) ("A showing that the
employer treated a similarly situated employee differently is a
common and especially effective method of establishing a prima
facie case of discrimination. . . .") (quoting Abdu-Brisson v.
Delta Air Lines, 239 F.3d 456, 468 (2d Cir. 2001)) (internal
quotation marks omitted).  Lou Mauro, a form Buyer in the UST
purchasing department, was accused of being verbally abusive to
other employees and of using company time and assets to further a
private project.  In response, UST gave Mauro several warnings
and opportunities to change and improve his performance before
termination, whereas Kanios, who had just recently received a
positive performance review and a bonus, was terminated without
any warning or imposition of a less severe punishment.  Kanios
has, therefore, met her prima facie burden.

UST has met its burden to proffer a legitimate, non-
discriminatory reason for terminating Kanios. UST asserts that
Kanios was terminated because of performance issues. This
assertion is supported by the testimony of Maguire, Uliasz, and

-16-

Howard, which indicate that Kanios failed to place orders for materials needed by UST manufacturing facilities.

Defendants' motion must be denied with respect to this claim. There are disputed issues of fact as to whether UST's explanation for Kanios's termination is pre-textual. Conflicting testimony evidences a legitimate dispute regarding whether Kanios was actually derelict in performing her duties. Additionally, for the reasons previously stated, there are disputed issues of fact regarding UST's and its employees' motives in terminating Kanios's employment. Resolution of these issues of fact is essential to determining if UST's proffered reasons for terminating Kanios are pretextual. Kanios does not have to prove that Uliasz treats all women poorly; rather, she must be able to prove that Uliasz treated her poorly because she is a woman, which she may be able to do. Therefore, defendants' motion for summary judgment with respect to the sex discrimination claim is denied.

## C. RETALIATION CLAIMS

The allocation of burdens of proof in retaliation cases also follows the general rule enunciated by the Supreme Court in McDonnell Douglas. See Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996). To establish a prima facie case for retaliation, a plaintiff must show that (1) the employee was

-17-

engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  See Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003); Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).

Kanios has established a prima facie case of retaliation. Kanios alleges and has produced evidence that (1) she reported the harassment by Uliasz, which is a protected activity; (2) UST was aware of the her complaints; (3) she was terminated; and (4) the temporal proximity of her reports of harassment and her termination gives rise to an inference that the reason she was terminated was due to her complaints.  Although Uliasz and Howard may not have seen the letters from Kanios's attorney setting forth her claims in detail, there is no doubt that Uliasz and Howard were aware that Kanios had complained about Uliasz's behavior.  As stated in the preceding section, UST claims that it terminated Kanios's employment because she failed to place several important orders. Therefore, the burden shifts to Kanios to show that the defendant's proffered explanation is a pretext for retaliation.  See id.

As previously discussed, there are disputed issues of fact

-18-

regarding UST's true reasons for terminating Kanios's employment.
Just as with the sex discrimination claims discussed herein,
Kanios has offered sufficient evidence to allow a reasonable jury
to find that UST did not terminate her employment because of poor
performance, but rather in retaliation for complaining about
Uliasz.  Therefore, the defendant's motion for summary judgment
with respect to Kanios's retaliation claim is denied.

## D. AIDING AND ABETTING

In the fifth count of her complaint, Kanios alleges that
Uliasz aided and abetted UST in its discriminatory practices in
violation of Section 46a-60(a)(5) of the Connecticut General
Statutes.  Section 46a-60(a)(5) provides that it is a violation
of CFEPA for anyone "whether an employer or not" to "aid, abet,
incite, compel or coerce the doing of any act declared to be a
discriminatory employment practice or to attempt to do so."
Conn. Gen. Stat. § 46a-60(5).  While there is no individual
liability under Title VII, state statutes may provide a cause of
action against individual defendants for aiding and abetting
where the corresponding federal statute does not.  See Tomka, 66
F.3d at 1317 (reversing dismissal of claims brought pursuant to a
state statute making it an unlawful discriminatory practice "to
aid, abet, incite, compel or coerce the doing of any of the acts
forbidden under [the state statute]").

-19-

UST argues that Uliasz was the only person who harassed Kanios, and therefore, he could not have aided and abetted himself.  Although it is true that only Uliasz is accused of harassment, more than one person is allegedly involved in the termination and discriminatory practices of UST.  Kanios may be able to show that Uliasz aided UST's discriminatory practices by colluding with other constituents of UST to perpetuate the alleged harassment and bring about her ultimate termination.  Therefore, the defendant's motion from summary judgment with regard to the aiding and abetting claim is denied.

E. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Kanios claims that UST and its agent Uliasz should be liable for negligent infliction of emotional distress.  The Supreme Court of Connecticut in, <u>Perodeau v. Hartford</u>, 259 Conn. 729, 757 (2002) held that an employer is not liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment.  In reviewing negligent infliction of emotional distress in the employment context "[t]he dispositive issue [is] whether the defendant's conduct during the termination process was *sufficiently wrongful* such that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and

-20-

that [that] distress, if it were caused, might result in illness

or bodily harm." Id. at 751 (emphasis in original; internal

quotation marks omitted).  As such,

> negligent infliction of emotional distress in the
> employment context arises only where it is based upon
> unreasonable conduct of the defendant in the
> termination process. . . .  The mere termination of
> employment, even where it is wrongful, is therefore
> not, by itself, enough to sustain a claim for negligent
> infliction of emotional distress. The mere act of
> firing an employee, even if wrongfully motivated, does
> not transgress the bounds of socially tolerable
> behavior.

Parsons v. United Technologies Corp., 243 Conn. 66, 88-89 (1997)

(citation omitted; internal quotation marks omitted).

Kanios has not alleged sufficient facts to sustain a claim

for negligent infliction of emotional distress against UST and

Uliasz.  She argues that her allegations of abuse and misconduct

on the part of Uliasz and UST during the final weeks of her

employment are the basis for the negligent infliction of

emotional distress claim, and that this unreasonable conduct

occurred during the termination process.  Defendants point out

that the termination of her employment occurred via a letter sent

to Kanios's home address and contend that, despite any possible

infliction of emotional distress before the termination process,

no outrageous conduct occurred during the termination process.

In this case, the termination process consisted of

discussions between UST managers outside the presence of Kanios,

-21-

and notice of this decision to Kanios by letter.  Although Kanios

attempts to characterize the conversations surrounding her

request and UST's approval for medical leave as part of the

termination process, they are not.  Actionable conduct occurring

in the termination of employment usually involves removal from

the actual premises of employment in an unreasonable manner or

unreasonable treatment during the period of time in which the

termination of employment is pending.  See Perodeau, 259 Conn. at

729; Parsons, 243 Conn. at 66.  In fact, the cases upon which

Kanios relies involve situations where the plaintiff was

allegedly treated unreasonably during the termination process.[3]

---

[3] See, e.g.,  Copeland v. Home and Community Health
Services, Inc., 285 F. Supp. 2d 144 (D. Conn. 2003) (holding that
where employer pressured the plaintiff to return to work by being
inflexible about the date on which she was required to return to
work from medical leave, and by threatening to hire, and
ultimately hiring, a replacement when the plaintiff did not
return on desired date a motion to dismiss should not be
granted.); Edwards v. Community Enterprises, Inc., 251 F. Supp.
2d 1089 (D. Conn. 2003) (holding where plaintiff, who was living
at premises as part of share-home community was terminated and
then, despite knowledge that worker had pneumonia,  was told to
leave in 48 hours and was threatened to have police called,
motion of summary judgement was denied); Nance v. M.D. Health
Plans, Inc., 47 F. Supp. 2d 276 (D. Conn. 1999) (holding that
where plaintiff alleges that plaintiff was terminated and sent
home without incident but subsequent investigation was performed
in embarrassing manner and factual questions regarding when the
actual termination process began, motion to dismiss denied);
Cameron v. Saint Francis Hospital and Medical Center, 56 F. Supp.
2d 235 (D. Conn. 1999) (denying motion to dismiss where plaintiff
was notified of impending termination and alleged that plaintiff
was subsequently treated in an embarrassing and humiliating
manner during the months leading up to his termination).

Kanios was not subjected to a period of embarrassing investigation, or outrageous treatment while her termination was pending; rather, she received a termination letter after an investigation that even she does not allege was embarrassing or unreasonable.

Although UST may have acted for reasons that violated the law, and it may be possible for an employer to inflict emotional distress even though the employee is not present at work, UST's and Uliasz's actions did not occur during the termination process. Accordingly, defendants' motion for summary judgment with respect to the claim for negligent infliction of emotional distress is granted.

### F. FAMILY MEDICAL LEAVE ACT

The substantive provisions of the FMLA at issue here are the requirements that an employer (1) permit an eligible employee at least twelve workweeks of leave each year for certain family emergencies, including the birth of a child; and (2) place an employee who has taken leave in accordance with the FMLA in the same or a comparable position upon the employees return to work. See 29 U.S.C. § 2612(a) & § 2614(a)(1). An employer's interference with an employee's exercise of rights provided by the FMLA is a violation of the statute and is enforceable by a civil action brought by or on behalf of aggrieved employees in

state or federal court.  See 29 U.S.C. §§ 2615(a) & 2617(a).

The basis for Kanios's FMLA claim is that UST misrepresented the amount of time she had available for federal FMLA leave and thus interfered with Kanios's FMLA rights.  Kanios claims that this representation should preclude UST from claiming that she did not have any federal FMLA leave available.  UST proffers three reasons why Kanios's FMLA claim should fail.  First, UST claims that Kanios never certified that she was suffering from a "serious health condition" as required by 29 U.S.C. § 2612(a)(1).  Second, because Kanios was not able to return to work at the end of her leave, UST argues that it was free to terminate her employment.  Third, Kanios had exhausted her twelve weeks of leave at the time she was terminated.

Defendants motion must be denied with respect to this claim.  The record indicates that Kanios's physicians may have satisfactorily certified her condition.  (See Dkt. # 41 Ex. Q & Y).  Further, the record does not compel the conclusion that Kanios was not able to return to work as of the date her employment was terminated.   Additionally, despite the fact that Kanios may have exhausted her federal FMLA leave, Kanios may prevail on her claim that UST's misrepresentation precludes UST from claiming that her federal FMLA leave was exhausted.  See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 493-495 (8th Cir.

-24-

2002); <u>Woodford v. Community Action of Green County Inc.</u>, 268
F.3d 51, 57 (2d Cir. 2001) ("[T]he doctrine of equitable estoppel
itself may apply where an employer who has initially provided
notice of eligibility for leave later seeks to challenge that
eligibility.  Thus, future employees who rely to their detriment
upon the assurance of their employer that they qualify for leave
under the FMLA may have recourse to the doctrine of equitable
estoppel even without an enforceable regulation protecting their
right to rely upon an employer's notice of eligibility.").

Kanios contends, and Viesta admits, that Viesta told Kanios
on March 20, 2001, the day after Kanios left work for leave, that
Kanios had three and a half weeks of FMLA leave remaining. (<u>See</u>
Dkt. # 48 Ex. 4 (Viesta Depo.) at 128-129).  Although Viesta did
not specify whether she meant federal or state FMLA leave, Kanios
claims that Viesta knew that her statement made during the phone
call was untrue at that time.  UST relies upon a letter, which
Kanios received on or about April 6, 2001, requesting certain
documents needed to process her leave and short-term disability
requests.  (<u>See</u> Dkt. # 41 Ex. Z).  Although the letter cites the
amount of leave that Kanios had already taken during the past
twelve months, which exceeded twelve weeks, and Kanios could have
concluded that her twelve weeks of FMLA leave were exhausted,
Kanios may be able to show that she was reasonable in relying on

Viesta's statement that she had three and a half more weeks of
federal FMLA leave available in spite of the letter.  Because
Kanios may be able to prove that UST interfered with her FMLA
rights by intentionally overstating the amount of leave available
to her, defendants' motion must be denied with respect to this
claim.

G. NEGLIGENT MISREPRESENTATION

Kanios alleges that "UST encouraged plaintiff to take [FMLA]
leave, which began on or about March 20, 2001, assuring and
representing to her that it was for her own good and that she
would be allowed to return to work."  (Dkt. # 32 ¶ 23).  To
prevail on a cause of action for negligent misrepresentation
under Connecticut law, a plaintiff must show, (1) that the
defendant made a misrepresentation; (2) the defendant knew, or
reasonably should have known, that the statement was untrue at
the time made; and (3) the plaintiff's reliance upon this
statement was reasonable and to the plaintiff's detriment. See
Johnson v. Chesebrough-Ponds USA Co., 918 F. Supp. 543, 548 (D.
Conn 1996); see also Billington v. Billington, 220 Conn. 212, 217
(1991).

For the reasons set forth in the preceding section, Kanios
may be able to prove that Viesta misrepresented the amount of

-26-

FMLA leave available to Kanios.[4] Even if Viesta was mistaken or failed to clearly articulate what leave benefits Kanios was entitled to, she should have known whether Kanios had federal FMLA leave available, and merely having a reason or duty to know if a representation is true is sufficient to support a claim for negligent misrepresentation.  See Dacourt Group, Inc. v. Babcock Industries Inc., 747 F. Supp. 157, 161 (D. Conn. 1990). Therefore, the defendant's motion for summary judgment with respect to the claim for negligent misrepresentation is denied.

### III.  CONCLUSION

For the foregoing reasons, UST's motion for summary judgment is **DENIED in part and GRANTED in part.**  UST is entitled to judgment in its favor on the sixth count. With respect to the remaining causes of action, the parties shall file a joint trial memorandum on or before **March 24, 2006.**

So ordered this 30th day of December, 2005.

**/s/DJS**
_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**

_____

[4] This conclusion is based upon an admittedly liberal, but nevertheless permissible, reading of Kanios's complaint.

-27-